[Civ. No. 14491. Second Dist., Div. One. Dec. 14, 1944.]

H. REAVE DARLING et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, ROSINA FERNHOLTZ et al., Respondents.

James E. Minds for Petitioners.

Everett A. Corten, Fred G. Goldsworthy and Earl D. Killion for Respondents.

YORK, P. J.—Petitioners, the employer and the insurance carrier of such employer, seek by the instant proceeding to review the findings and an award of death benefits made by the respondent commission on January 5. 1944, in favor of

the surviving dependent wife and the minor daughter of the deceased employee, Eugene Fernholtz.

Said commission found that the said employee, while employed as a florist on December 22, 1942, by the petitioner Darling, "sustained injury arising out of and occurring in the course of said employment consisting of a right inguinal hernia . . . said injury required a surgical operation, which operation caused a clot to lodge in the employee's lung, causing an abscess, proximately resulting in his death on May 22, 1943."

From the evidence adduced at the hearing before the referee, it appears that the operation for the cure of the hernia was performed on February 23, 1943, by Dr. Donald Cass, whose report shows that the patient made "an uneventful recovery except for a respiratory infection which developed while in the hospital." The patient reported to Dr. Cass several times after he left the hospital and on April 6th was discharged by Dr. Cass as cured and returned to his work on April 12, 1943. Mrs. Fernholtz testified that her husband terminated his employment at "Darling's" about a week before his death, for reasons not material here; that so far as appeared to her, he had been in perfect health and made no complaints until he suffered the hernial injury. Three weeks or a month before his death, he told her that while walking he experienced a pain in his upper chest which caught his breath. Sometime later, because of this recurring pain, Mr. Fernholtz again consulted Dr. Cass, as a result of which he told his wife that Dr. Cass said there was nothing wrong with his heart. Dr. Cass reported the date of this visit as May 19, 1943, stating that Mr. Fernholtz complained to him that for several weeks he had experienced pain in his heart on exertion, but that he had insisted it was due to gas. Dr. Cass stated in his report that "He was advised to have an electrocardiographic examination for possible coronary disease, inasmuch as it was indicated that this might be the trouble." Mrs. Fernholtz further testified that on the evening of May 20, 1943, following his visit to Dr. Cass, her husband was again seized with pain in his upper chest which he again concluded was caused by gas. On the following day, Friday, May 21st, he attended a luncheon of the Rotary Club at the Biltmore Hotel when the pain again recurred and he became very ill. Dr. W. F. Traughber, a physician of twenty-five or

thirty years' experience, was present at this luncheon and treated Mr. Fernholtz there and later at his office. When her husband returned home that evening, Mrs. Fernholtz testified that he related what had occurred and advised her that the doctor reported there was nothing wrong with his heart. He was almost immediately seized with the pain and was unable to lie down or rest that night, indicating to his wife that he felt as if he had an olive seed in his upper chest which he was unable to remove by coughing. On Saturday morning, May 22, 1943, Mrs. Fernholtz took her husband to Dr. Traughber's office where his condition became worse. He had difficulty in breathing and kept coughing and spitting up a yellow-grayish substance which eventually became tinged with blood. Mrs. Fernholtz was unable to secure hospital accommodations for her husband, and took him home that afternoon with a nurse in attendance. His condition became progressively worse and at 11 o'clock that night he died.

Dr. Traughber performed an autopsy in the presence of William T. Stahlmann, an embalmer employed by the Forest Lawn Cemetery Association, and reported his findings and opinion that the death of Mr. Fernholtz resulted from an abscess in the right lung, caused by a blood clot lodging there, which in turn resulted from the operation performed on February 23, 1943.

Mrs. Fernholtz notified Dr. Cass of her husband's death and subsequently at his request she consented that a second autopsy be performed. This was done by Dr. A. R. Camero, whose findings were to the effect that the death of Mr. Fernholtz resulted from coronary occlusion and heart failure, and was in no way connected with the hernia operation.

The respondent commission adopted the findings and opinion of Dr. Traughber and made its award of compensation accordingly.

It is here contended that "in reaching its decision of January 5, 1944, the respondent commission denied petitioners due process of law." In this connection petitioners maintain that at the time the members of the respondent commission reached their decision they "had not read or heard read the record of the testimony taken before the hearing officer on October 5, 1943, nor the exhibits which included all medical reports and reports of the two autopsies."

When this cause was on calendar for oral presentation to this court on June 26, 1944, permission was granted for the

filing of a supplemental return to the writ of review in order to show the situation as it actually existed at the time the case was before the commission.

This supplemental return contains a memorandum of the referee who heard the cause on October 5, 1943, which summarizes the evidence produced at that time. This memorandum was dictated on the day of the hearing. On October 8, 1943, said referee dictated a supplemental memorandum summarizing the medical reports of Dr. Traughber, Dr. Camero, and Dr. Cass, together with a so-called discussion and interpretation of these reports. On October 29, 1943, the referee dictated his memorandum on decision with the following recommendation: ''Employee sustained injury a.o.e. and c.o.e., consisting of a right inguinal hernia, which caused temporary total disability from February 22, 1943, to and including April 11, 1943, a period of 5-6/7 after deducting the waiting period of one week, entitling the employee to $25.00 a week during said time, in the total sum of $146.43, which has been paid by the defendants. Earnings, maximum. The employee died on May 22, 1943, *as the result of a heart condition, which was neither caused nor aggravated by any injury sustained in the employment. Take nothing award to be submitted for signatures of the Commissioners.*'' (Italics added.)

On October 13, 1943, said referee addressed a memorandum to the medical department of respondent commission, asking for a review of the ''file, our memo and the electrocardiographic tracings, and advise (1) Whether the tracings show a normal heart, as reported by Dr. Traughber; (2) Whether the diagnosis of Dr. Traughber or Dr. Camero is supported by the reported findings; (3) Whether we are correct in our tentative conclusion that this is purely a heart death; and (4) Assuming this is a purely heart death, did the fact of surgery on February 23, 1943, play any part either in aggravating the heart trouble or in hastening the time of death.''

Having received reports from Dr. Donald Cass on November 18th and 19th, said referee indited a supplemental memo on decision dated November 26th, in which he quoted from said reports, to wit: ''In view of the lapse of time between his surgical treatment and the development of the symptoms, it is still my (Dr. Cass's) opinion that his coronary disease was in no way related to his operation or to his hernia . . .'' and recommended that ''Employee sustained injury aoe and

coe, consisting of a right inguinal hernia, which caused temporary total disability from February 22, 1943, to and including April 11, 1943; maximum earnings; *employee died on May 22, 1943, as a result of a heart condition which was neither caused nor aggravated by any injury sustained in the employment. Decision accordingly.*" (Italics added.)

Petitioners are frank enough to say that they "are perfectly willing to stipulate that up to this point in the proceedings before the Referee Campbell, the hearing officer, such proceedings were entirely proper and lawful, and in line with what we understand due process to be in an administrative hearing." However, they continue, "From this point on . . . we will attempt to point out . . . wherein the respondents have violated both the letter as well as the spirit of the law and shall attempt to show that the action of the respondent commission has been capricious and arbitrary and that the so-called 'expeditious procedure' followed by the respondent commission and substituted by it for 'due process of law' has defeated the ends of justice and denied petitioners that due process of law to which they are lawfully entitled."

Without going into detail with regard thereto, an examination of the medical reports of the doctors employed by the petitioners on one hand, and the report of the deceased employee's private physician, Dr. Traughber, on the other, reveals a decided conflict in the opinions of these medical experts.

Reverting again to the supplemental return to the writ, it is disclosed that on December 23, 1943, a so-called "intercommunication" passed from Clell H. McCredie, referee of respondent commission, to Douglass A. Campbell, the referee who presided at the open hearing of the instant cause, which reads as follows:

"The Commission refused to sign your proposed Findings and Award. . . . They wish to accept the applicant's medical that the operation caused the clot to lodge in the lung, resulting in an abscess, which resulted in the death; that is, they wish to issue a compensable award as to the death being aoe and coe (arising out of and occurring in the course of employment.) *The record has been written up.* Will you please prepare appropriate findings and award in accordance with the Commission's wishes?" On December 30, 1943, Referee Campbell dictated a supplemental memorandum on decision, together with an order, as directed by Referee Mc-

Credie. A photostat copy of respondent commission's register of proceedings in the instant cause discloses that on December 8, 1943, an "order for transcript of testimony" was filed, and that on December 13, 1943, "Transcript of Testimony filed." The transcript of the testimony which forms a part of the return to the writ carries the stamp: "Los Angeles Office Industrial Accident Commission, State of California. FILED Dec. 13, 1943, R. E. Mustoe, Asst. Secretary." The return to the writ also contains an order by said assistant secretary to transcribe the testimony which was made and filed on December 8, 1943. In its answer to the petition for the writ herein, it is reiterated that when the commission made its findings and award herein on January 5, 1944, it "had before it, and the commission fully considered, the findings and recommendation of the hearing referee, and the testimony adduced at the hearing."

Thereafter, on February 11, 1944, Referee McCredie dictated a memorandum recommending to the commission that defendants' petition for rehearing be denied, in which the evidence was again summarized and the statement made that "There is a very definite conflict in the medical evidence."

Under section 5310 of the Labor Code, the Industrial Accident Commission is given the right to "appoint one or more referees in any proceeding, as it may deem necessary or advisable, and may refer matters arising out of the same proceedings to different referees. . . . Any referee appointed by the commission has the powers, jurisdiction and authority granted by law, by the order of appointment, and by the rules of the commission. . . ."

"The referee shall report his findings in writing to the commission within fifteen days after the testimony is closed. The report shall be made in the form prescribed by the commission and shall include all matters required to be included in the order of reference or by the rules of the commission. . . ." (Lab. Code, § 5313.)

"Upon the filing of the report of the referee, the commission may confirm, adopt, modify or set aside the same or any part thereof, and may, with or without further proceedings, and with or without notice, enter its order, findings, decision, or award based in whole or in part upon the report of the referee, or upon the record in the case." (Lab. Code, § 5315.)

In *Nielsen* v. *Industrial Acc. Com.*, 220 Cal. 118, 122 [29 P.2d 852, 35 P.2d 995], it was held by the Supreme Court

that questions of the weight of the evidence and the credibility of the witnesses ''are for the commission and if there is any evidence or reasonable inference which will support the commission's finding, the reviewing court has no power to disturb it.''

Section 5703 of the Labor Code enumerates those matters which the commission may receive as evidence either at or subsequent to a hearing, and use as proof of any fact in dispute, in addition to sworn testimony presented at an open hearing. These matters include ''Reports of attending or examining physicians.''

In the instant cause there exists a direct conflict in the medical testimony and it was incumbent upon the commission to decide the case one way or the other. It was impossible for the commission to believe both the reports of Dr. Traughber on the one side and the reports of Dr. Cass and Dr. Camero on the other. In other words, the evidence offered by the applicants for compensation, if believed by the commission, is ample to support the finding that a blood clot formed as a result of the operation and that this clot lodged in the decedent's lung, thereby causing an abscess proximately causing his death on May 22, 1943. It should also not be overlooked that Dr. Cass reported decedent's heart normal just before the operation, and it is inconceivable, even to a layman, that Dr. Cass would have operated on Mr. Fernholtz if he had the serious heart condition described in the reports of Dr. Cass and Dr. Camero which were introduced in evidence by petitioners.

A careful examination of the entire record discloses that all parties to the proceeding before the commission were afforded a full and complete opportunity to present their evidence and that such evidence was before the commission and considered by it at the time it made its decision on January 5, 1944.

The order awarding compensation to the widow and minor child of the deceased employee is therefore affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied January 4, 1945, and petitioners' application for a hearing by the Supreme Court was denied February 8, 1945.