[L. A. No. 20925. In Bank. June 3, 1949.]

NATIONAL AUTOMOBILE & CASUALTY INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, JEAN GUEST, et al., Respondents.

Henry G. Sanford for Petitioner.

T. Groezinger and Robert Ball for Respondents.

CARTER, J.—Petitioner, insurance company, seeks to have annulled an award of respondent commission reforming and fixing liability as reformed, a workmen's compensation insurance policy issued by it to Michael Lebedeff, an employer.

A. W. Schmidt and Lebedeff, in May, 1946, operated on a "50-50" basis, but in Schmidt's name, a taxicab business, under the name Valley Taxi. Schmidt retired from the venture and Lebedeff became the sole owner.

Schmidt had previously obtained a workmen's compensation insurance policy from petitioner which excluded employees who were relatives. In July, 1946, after the purchase of the business by Lebedeff, Ernest W. Schween, an agent for petitioner, approached Lebedeff on the subject of selling him a policy of workmen's compensation insurance for the latter's employees. Lebedeff advised Schween that his only employees were relatives, two brothers-in-law, one named Fred Guest, and a sister-in-law. Schween having stated that he would take care of the coverage, Lebedeff told him to write such a policy. About a week later, Lebedeff received a policy of workmen's compensation insurance dated July 21, 1946, issued by the petitioner. It contained a clause excluding injuries to relatives. Lebedeff did not read the policy. He sent Schween a check for the premium. On August 24, 1946, Guest sustained an injury in the course of his employment by Lebedeff which resulted in his death the same day. A claim by Guest's dependents for death benefits under the workmen's compensation laws followed and was resisted by petitioner on the ground that the insurance policy expressly excluded relatives, including Guest.

A panel of the commission found that Lebedeff had advised Schween, petitioner's agent, that coverage of relatives was desired and that the policy should be reformed to embrace relatives.

Petitioner contends that the evidence is not sufficient to support the finding and that the panel of the commission had no authority to find contrary to the finding of the referee.

It is conceded that Schween was the agent of peti-

tioner. It appears that the taxi business had been in Schmidt's name prior to the first part of May, 1946, but under an arrangement with Lebedeff whereby the latter engaged in the business with Schmidt on a "50-50" basis. Schmidt carried an insurance policy that had been arranged by Schween. Then Lebedeff purchased the business from Schmidt, but never saw any insurance policies in connection with it. Apparently the policy Schmidt had obtained expired about July 21, 1946. Schween, having heard of the change in ownership of the business and knowing of the expiration of the Schmidt policy, contacted Lebedeff at his place of business for the purpose of selling him a workmen's compensation policy covering his employees. There is a variance in the testimony as to the date when Schween made his solicitation, but it was sometime between July 22 and 27, 1946. All witnesses are agreed that a conversation was had between Schween and Lebedeff while the latter was sitting in one of his taxis and that Schween solicited Lebedeff to buy the insurance. Schween admits there were several men other than he and Lebedeff present at the time. It is undisputed that the only employees Lebedeff had at the time were his relatives. The divergence in the testimony comes with respect to whether Lebedeff told Schween that his employees were relatives. Lebedeff testified positively that when Schween asked him to take a policy, he said that he had only relatives working for him, to which Schween replied that that was all right and that he would take care of it. Lebedeff's version of the conversation was corroborated in substantially all particulars by the men who were present at the conversation. While one of them was an employee of Lebedeff, the others were not. Moreover, it is unlikely that Lebedeff would agree to take a policy which excluded relatives when his only employees were in that category.

Schween testified that nothing was said to him about Lebedeff's employees being relatives, but he was evasive and usually phrased it in the words "I do not remember" that such a thing was said. In addition to that, he wrote a letter to the insurer, petitioner, three days after Guest met his death (Aug. 27, 1946) in which he stated: "At the time that the policy was ordered by Mr. Lebedeff, we had a conversation in which he advised that he was hiring some relatives. These relatives are in-laws of Mrs. Lebedeff, and as such, I failed to report them to you, which according to the policy should have been done since they should have been specifically named."

Later (Sept. 23, 1946) he wrote to petitioner: "It did not occur to me to inquire of Mr. Lebedeff as to whether or not he had relatives in his employ at the time of his ordering the policy or up to the time Mr. Guest was injured. He has stoutly maintained since the accident that he advised me on a certain occasion that he had his brother-in-law employed as a taxi driver. *I do not remember same* but I do remember the occasion referred to. *It could have happened,* but I don't usually forget business matters, as important as that." [Emphasis added.] Petitioner's investigator who made an examination of the circumstances of the injury to Guest, testified that Lebedeff told him that he had not informed Schween that relatives were employed when the policy was ordered. Lebedeff denied it. It also appears that in the course of the investigation in September, 1946, an endorsement to the policy which specifically included a named relative was ordered by Schween and affixed to the policy.

As we understand petitioner's contention, it argues that the evidence is insufficient and that even when viewed most favorable to Lebedeff it does not make out a case of mutual mistake or mistake by one party known by the other which would justify reformation. The evidence shows that an agent (Schween) of the insurer (petitioner) was advised that the insured (Lebedeff) desired a policy of workmen's compensation insurance covering the insured's employees and the agent agreed that such a policy would be obtained. In spite of such an arrangement the policy as written excluded relatives. The insurer had the knowledge of its agent concerning the coverage of the policy that was to be supplied. Whether the failure to include relatives was due to the agent's negligence, fraud or mistake, or the mistake of the insurer, or mutual mistake of Lebedeff and the agent or the insurer, we have a proper case for the reformation of the policy to include relatives. The general rule has been stated: "Where an agent is authorized to act in the premises, and through his mistake or fraud the policy fails to express the real contract between the parties, or if, by inadvertence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, there is no doubt as to the power of a court of equity to grant relief by a reformation of the contract; at least, in case there is no fraud or collusion between the agent and the insured. In other words, where a policy of insurance does not represent the intention of the parties solely because of some fault or negligence of an agent of the insurer, equity

will reform it so as to make it express such intention. So, a policy will be reformed to express the actual contract made with the agent in obtaining the insurance, although such contract differs from the expressed terms of the policy, and notwithstanding it is provided that agents have no authority to make, alter, or discharge contracts.'' (Cyc. of Ins. Law, Couch, § 1392.) (See, also, *Bankers Indem. Ins. Co.* v. *Industrial Acc. Com.*, 4 Cal.2d 89 [47 P.2d 719]; *Peterson* v. *Commonwealth*, 212 Mo. 434 [249 S.W. 148]; *Rapides Club* v. *American Union Ins. Co. of New York*, 35 F.2d 253; *Stewart* v. *Commonwealth Casualty Co.*, 137 Kan. 919 [22 P.2d 435]; Insurance Law & Practice, Appleman, § 7609.)

In connection with the claim of insufficiency of the evidence, it is argued that the evidence must be clear and convincing, a quality it does not here attain. However, ''The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.'' (*Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732].) (See, also, *Viner* v. *Untrecht*, 26 Cal.2d 261 [158 P.2d 3]; *Home & Farm Co.* v. *Freitas*, 153 Cal. 680 [96 P. 308]; *Hercules Gasoline Co.* v. *Security Ins. Co.*, 122 Cal.App. 499, 503 [10 P.2d 128].) In the instant case, whether the evidence was clear and convincing, was for the determination of the commission.

Further, in connection with the claim of the insufficiency of the evidence to establish a case for reformation, petitioner asserts that the policy was not subject to reformation because it contained clauses providing that relatives were excluded; that no conditions or provisions of the policy may be waived or altered except by certain named officers of the insurer; and that no notice or knowledge of an agent of the insurer may effect a waiver or change in the policy.

In regard to the clause excluding relatives, it is clear that if the policy bars reformation, then there never could be a reformation for the doctrine of reformation rests upon the proposition that by reason of mistake or fraud the contract as written contains or fails to contain matters which it was agreed and intended it should not or should contain. The only bearing such clause has in the instant case is whether the insured's failure to discover its presence after the delivery of the policy to him debars his recovery. He testified that

he did not read the policy; it was a relatively short time after it was delivered to him that Guest was killed; he stated that he relied upon Schween to take care of his insurance; and it is clear there was no reason for him to suppose that the policy excluded relatives contrary to the agreement. ■ The rule is settled in this state "that the mere failure to read an insurance policy does not militate against its reformation upon the ground of mutual mistake." (*Payne* v. *California Union Fire Ins. Co.*, 129 Cal.App. 582, 586 [19 P.2d 40].) (See, also, *Golden Gate Motor T. Co.* v. *Great American Indem. Co.*, 6 Cal.2d 439 [58 P.2d 374]; *Hercules Gasoline Co.* v. *Security Ins. Co.*, 122 Cal. App. 499 [10 P.2d 128]; *California Packing Corp.* v. *Larsen*, 187 Cal. 610, 614 [203 P. 102]; *Los Angeles & Redondo R. Co.* v. *New Liverpool S. Co.*, 150 Cal. 21 [87 P. 1029]; *Travelli* v. *Bowman*, 150 Cal. 587 [89 P. 347]; *Sullivan* v. *Moorhead*, 99 Cal. 157 [33 P. 796]; *S. E. Slade Lbr. Co.* v. *National Surety Co.*, 128 Cal.App. 419 [17 P.2d 775]; *Cantlay* v. *Olds & Stoller Inter-Exch.*, 119 Cal.App. 605 [7 P.2d 395]; 22 Cal.Jur. 726.)

■ Turning to the clause purporting to limit the power of agents and confining the power to write or modify policies to certain named officers of the company, it is equally clear that such clause does not bar reformation. In addition to the above discussion on the relative exclusion clause, it is pertinent to note that Schween was the petitioner's agent. Lebedeff had no reason to suppose that his authority was limited as stated in the policy, at least prior to the delivery of the policy to him, and as seen, his failure to read the policy was not necessarily negligence barring reformation. Thus it is soundly reasoned, after stating that limitations on the power of an agent contained in a policy are binding as to subsequent acts of the agent: "But as to transactions that have taken place prior to the delivery of the policy, an entirely different rule applies. While engaged in these transactions with the agent the third party has as yet received no notice of limitations in the policy, and has a right to suppose that the agent is authorized to do all acts connected with the business intrusted to him. Therefore these restricting provisions in the policy will not affect the rights of the insured as to any act done before the delivery of the policy. Thus it is held, with little dissent, that a stipulation in the policy that the agent taking the application shall be deemed the agent of the insured will not prevent the insurer from being bound by any acts done by the agent in taking the application, or *by any infor-*

mation communicated to the agent at that time.'' (Vance on Insurance, p. 434.) And it has been held that such limitations do not bar reformation of the policy in accordance with the prior agreement with the agent. (*Stewart* v. *Commonwealth Casualty Co.*, 137 Kan. 919 [22 P.2d 435] ; *Rapides Club* v. *American Union Ins. Co. of New York*, 35 F.2d 253; see *Golden Gate Motor T. Co.* v. *Great American Indem. Co.*, *supra*; *Peterson* v. *Commonwealth Casualty Co.*, 212 Mo. 434 [249 S.W. 148].)

It is urged that inasmuch as the referee, prior to rehearing, recommended a finding against reformation (believing Schween instead of Lebedeff and his witnesses), and the referee on the hearing after a rehearing was granted made the same recommendation, the commission was without authority to allow reformation for it did not have an opportunity to observe the demeanor of the witnesses as the referees did; further, that the referee's refusal to believe Lebedeff's evidence shows an insufficiency of the evidence. After the initial hearing at which Lebedeff and two of his witnesses, Schween and the insurer's investigator, testified, the referee made his report and prepared findings in which he found against reformation, stating that he believed Schween rather than Lebedeff on the subject of whether the latter told the former he was employing relatives. In accordance therewith the commission made its award refusing reformation and absolving petitioner from liability. Guest's dependents and Lebedeff petitioned for a rehearing setting forth the heretofore quoted letter written by Schween on August 27, 1946, as newly discovered evidence and proposing to call a third witness to the conversation between Lebedeff and Schween. The referee who had conducted the original hearing recommended the granting of the petition. A rehearing was granted and a hearing held before a different referee. All the evidence theretofore given was considered and witnesses called. The August 27th letter was admitted in evidence. After that hearing, the last mentioned referee made his report recommending against reformation stating that the evidence showed that Lebedeff did not notify Schween that he employed relatives. A third referee then made his report reciting that the panel of the commission had reviewed ''the entire record'' and had decided the questions of law. The panel then made its award allowing reformation and recovery against petitioner. Petitioner's petition for a rehearing was denied by

the panel and in a memorandum on such denial it stated: "The testimony of Lebedeff that he had told Schween that he employed no one but relatives in the taxi business was corroborated by witnesses Harry Singleton, Mathew Gunn, and Sam Gunn, who swore that they were present and heard the conversation.

"Schween stated, variously, that Lebedeff had told him that he was hiring relatives; that Lebedeff had never told him he was employing relatives; and then, that he did not remember whether Lebedeff had or had not told him about the employment of relatives.

"A few days after the accident, Schween wrote a letter to the National Automobile Insurance Company (August 27, 1946), stating: 'At the time that the policy was ordered by Mr. Lebedeff, we had a conversation in which he advised that he was hiring some relatives.'

"In view of the facts as stated above, it is my opinion that the Insurance Company should be estopped from relying on the clause excluding relatives as a defense.

"In view of the conflicting statements made by Schween, it seems more reasonable to believe that Lebedeff told Schween that the only employees he had were relatives, which was corroborated by three other witnesses, than to believe Schween. He apparently was more interested in selling a policy than he was in whom it would protect.

"In addition to this, there is the factor that although Schween was an agent of the National Automobile Insurance Company he was purporting to sell Lebedeff what types of policies would be best for Lebedeff, and it was only natural for Lebedeff to rely on the belief that the policies which were delivered to him and on which he paid the premiums were covering the only employees he had in his business." We believe the foregoing memorandum adequately analyzes the situation and shows, as has heretofore been discussed, that there was adequate reason on the face of the record to disbelieve Schween and credit the contrary evidence. Hence it cannot be said that in coming to a conclusion on the facts contrary to that of the referees, the commission acted arbitrarily or without support in the record. ▮ Aside from that, however, the commission may make a factual determination contrary to that of a referee although the testimony is conflicting and it did not itself hear the testimony or observe the witnesses, but did examine the evidence and record. That conclusion clearly follows from the following provisions of

the Labor Code. The commission "is vested with full power, authority and jurisdiction to try and determine finally all the matters . . . subject only to the review by the courts as specified in this division. Such jurisdiction may be exercised by the commission through either of its panels . . . or, subject to the approval by the panel of the order, decision, or award, through a commissioner or referee." (Lab. Code, § 5301.) "After final hearing by the commission, it shall, within 30 days, make and file: (a) Its findings upon all facts involved in the controversy. (b) Its order, decision, or award stating its determination as to the rights of the parties . . ." (Lab. Code, § 5800.) The commission "may appoint one or more referees in any proceeding, as it may deem necessary or advisable, and may refer matters arising out of the same proceeding to different referees. The commission may appoint general referees. Any referee appointed by the commission has the powers, jurisdiction, an authority granted by law, by the order of appointment, and by the rules of the commission . . ." (Lab. Code, § 5310.) "The referee shall report his findings in writing to the commission within fifteen days after the testimony is closed. The report shall be made in the form prescribed by the commission and shall include all matters required to be included in the order of reference or by the rules of the commission. The facts found and conclusions of law shall be separately stated." (Lab. Code, § 5313.) "Upon the filing of the report of the referee, the commission may confirm, adopt, *modify, or set aside* the same, or any part thereof and *may,* with or without further proceedings, and with or without notice, *enter its order, findings, decision, or award* based in whole or in part upon the report of the referee, *or upon the record in the case.* [Emphasis added.] (Lab. Code, § 5315.) Pursuant to those provisions, this court held in *Pacific Indem. Co.* v. *Industrial Acc. Com.,* 28 Cal.2d 329 [170 P.2d 18], that it was proper for the commission to grant a rehearing although the hearing referee recommended against it, and to direct him to reach a different result when he still entertained different views on the sufficiency of the evidence. It was held in *Darling* v. *Industrial Acc. Com.,* 67 Cal.App. 2d 300 [154 P.2d 421], that the commission had power to decide the facts on conflicting medical reports in the record contrary to the conclusion of the referee and that such did not constitute a denial of due process of law. (See, also, *Evans* v. *Industrial Acc. Com.,* 71 Cal.App.2d 244, 249 [162

P.2d 488].) It appears that the commission may adopt the recommendation of the referee on a rehearing (who did not hear the evidence at the original hearing but did read it) reaching a different result than the hearing referee. (*Helmick* v. *Industrial Acc. Com.*, 46 Cal.App.2d 651 [116 P.2d 658].) ■ The evidence upon which the commission's award is based may be adduced before several referees at least where the commission reviews the evidence. (*O'Hare* v. *Industrial Acc. Com.*, 44 Cal.App.2d 629 [112 P.2d 915].)

■ Implicit in the rule that it is not a denial of due process for the commission to base its award on a report of a referee although it does not review the record, is the corollary that if it reviews the evidence in the record it may validly make an award contrary to the referee's recommendation. It is said: "Under section 5315 of the Labor Code, if the commissioners follow the recommendations of the referee who heard the evidence or read the record, they need not themselves review the evidence; however if they make a contrary determination they are required to make an independent examination of the record. (*Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 42 Cal.App.2d 192, 194 [108 P.2d 698]; *Taylor* v. *Industrial Acc. Com.*, 38 Cal.App.2d 75, 82 [100 P.2d 511].)" (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 329, 339 [170 P.2d 18].) See, also, *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492 [175 P.2d 823]; *Hohreiter* v. *Garrison*, 81 Cal.App.2d 384 [184 P.2d 323]; 48 Columb.L.Rev. 173, 181.)

For the foregoing reasons the award is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.