Filed 11/27/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| DAVID MORGAN,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>CLAUDIA DAVIDSON,<br><br>    Defendant, Cross-complainant and Appellant. | E068344<br><br>(Super.Ct.No. RIC1305585)<br><br>OPINION |


APPEAL from the Superior Court of Riverside County. Gloria Trask, Judge. Affirmed.

James S. Link for Defendant, Cross-complainant and Appellant.

Arias & Lockwood and Christopher D. Lockwood for Plaintiff, Cross-defendant and Respondent.

Plaintiff, cross-defendant and respondent David Morgan sued Daniel Pena and defendant, cross-complainant and appellant Claudia Davidson for battery. Davidson filed a cross-complaint against Morgan, alleging (1) assault, (2) battery, (3) conversion,

1

and (4) invasion of privacy. The trial court found in favor of Morgan and awarded him $209,000. Davidson raises three issues on appeal. First, Davidson contends substantial evidence does not support the $100,000 punitive damages award. Second, Davidson contends the trial court erred by not permitting her to use a deposition transcript when attempting to impeach Morgan during cross-examination. Third, Davidson asserts the trial court erred by not applying the continuing violation doctrine to extend the statute of limitations for the invasion of privacy cause of action. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Morgan and Davidson were next-door neighbors in the Mockingbird Canyon area of Riverside. Lynda Delgado was Morgan's next-door neighbor, on the other side of Morgan's house. Thus, Morgan lived between Davidson and Delgado. There was a fire access road between Morgan's house and Delgado's house. Prior to May 10, 2011, Delgado had seen Davidson's dogs on the access road, attempting to go under Morgan's fence to enter Morgan's property. Delgado had also seen Davidson's dogs viciously bark at Morgan's alpacas. One of Davidson's dogs was a white, unneutered male pitbull, named Cotton. The other dog was a German Short Haired Pointer, named Coco.

On May 10, 2011, at approximately 5:45 p.m., Delgado was at Morgan's house assisting with the care of Morgan's horses and alpacas. Coco and Cotton ran through a gate onto Morgan's property. Delgado "heard really loud barking and just really scary sounding growling and barking." The dogs were barking at the alpacas. Delgado then heard the alpacas' stress cry. Delgado moved from the horse pen toward the alpacas. Morgan took a dog leash from the garage area and placed the leash around Cotton's

2

neck. Morgan walked over to the gate by his driveway, in order to close it. Morgan's girlfriend was near a woodpile trying to capture Coco.

Davidson's son (Son), who was 14 years old, walked up Davidson's driveway and said, " 'I want my dog. I want my dog.' " Son was referring to Cotton. Pena and Davidson followed behind Son. Pena was Davidson's daughter's boyfriend. Morgan said he was keeping Cotton and would call animal control to have them impound the dog. Morgan wanted Cotton impounded because the dog had previously attacked Morgan's animals, and animal control advised Morgan to hold the dog so they could impound it in the future. Morgan refused to release Cotton to Davidson. Morgan repeatedly told Son, Pena, and Davidson to leave his property because they were trespassing. Davidson said, " 'I want my F'ing dog, give me my dog.' "

Pena opened the gate. Pena punched Morgan's face. Morgan fell to the ground, on his knees. Morgan did not strike anyone. Pena and Davidson continued striking Morgan, approximately five to 10 times each. When Morgan was bent forward on the ground, Davidson kicked Morgan's ribs, while Pena kicked Morgan's head and upper torso. Morgan screamed. Davidson and Pena yelled profanities. Son remained on the other side of the gate, watching the beating. Davidson, Pena, and Son left with Cotton. Morgan laid on the ground moaning in pain. Within an hour, sheriff's deputies arrived at Morgan's house.

Morgan went to the hospital emergency room. Morgan suffered welts and bruises on his head, a cracked tooth, painful bruising around his eye, an abrasion on his left shoulder, and an abrasion on his left knee. Morgan's eye was swollen shut for

3

approximately 10 days, and there was a large amount of blood in his eye. The damage to Morgan's eye caused him to experience blurry vision and "floaters." Morgan continued to experience blurry vision and floaters at the time of trial. He suffered headaches if he read anything lengthy.

The trial court awarded Morgan $9,000 in special damages and $100,000 in general damages. The trial court found Davidson and Pena acted with malice and oppression. The court awarded Morgan $100,000 in punitive damages.

**DISCUSSION**

A.      PUNITIVE DAMAGES

1.      *SUBSTANTIAL EVIDENCE*

Davidson contends there is not substantial evidence that she acted with malice or oppression.

" ' "[T]he power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor.' " (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.)

Punitive damages may be awarded when a defendant has acted with malice, fraud, or oppression. (Civ. Code, § 3294, subd. (a).) " 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or

4

safety of others." (*Id*. at subd. (c)(1).) " 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (*Id.* at subd. (c)(2).)

Pena punched Morgan's face. Morgan fell to the ground, on his knees. Morgan did not strike anyone. Pena and Davidson struck Morgan, approximately five to 10 times each. When Morgan was bent forward on the ground, Davidson kicked Morgan's ribs. Morgan screamed. Davidson yelled profanities.

Morgan suffered welts and bruises on his head, a cracked tooth, painful bruising around his eye, an abrasion on his left shoulder, and an abrasion on his left knee. Morgan's eye was swollen shut for approximately 10 days, and there was a large amount of blood in the eye. The damage to Morgan's eye caused him to experience blurry vision and floaters, which he continued to suffer at the time of trial.

Because Davidson punched and repeatedly kicked Morgan, a trier of fact could reasonably conclude she acted intentionally, i.e., it was not an accident that she struck Morgan because she struck him multiple times. Further, the evidence that Davidson struck Morgan multiple times reflects that she intended to cause an injury because repeatedly striking a person indicates a desire to cause to harm. Accordingly, substantial evidence supports a finding that Davidson acted with malice because she struck Morgan with the intention of causing Morgan to suffer an injury.

Davidson contends it was Pena who struck Morgan—not Davidson. We must view the evidence in the light most favorable to Morgan. (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 510.) The record reflects the following:

5

Morgan: "They both hit me in the head."

Morgan: "I fell on my knees

"The Court: And what happened?

"[Morgan]: They continued to hit me probably 15 to 20 times.

"The Court: Who are 'they?'

"[Morgan]: Daniel Pena and Claudia Davidson.

"The Court: Do you know it was both of them?

"[Morgan]: Yes, I do.

"The Court: How do you know it was both of them?

"[Morgan]: I observed this.

"The Court: What was that?

"[Morgan]: I said I observed the—myself being struck repeatedly and being kicked.

"The Court: Where were they standing?

"[Morgan]: Directly in front of me.

"The Court: And what were they using?

"[Morgan]: Their fist and their feet."

Pena and Davidson continued striking Morgan, approximately five to 10 times each. When Morgan was bent forward on the ground, Davidson kicked Morgan's ribs, while Pena kicked Morgan's head and upper torso. Because the record reflects that Davidson struck Morgan, and the testimony is reasonable, we cannot conclude that only

6

Pena struck Morgan. (See *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 466 [we must view the evidence in the light most favorable to the trial court's finding].)

Davidson asserts she was wearing slippers while kicking Morgan and therefore could not have injured Morgan. Malice requires an intent to injure, not actual injury. (Civ. Code, § 3294, subd. (c)(1).) The record reflects Davidson punched Morgan, in addition to kicking him. It can reasonably be inferred that Davidson punched Morgan and repeatedly kicked Morgan because Davidson intended to inflict an injury upon Morgan. (See *City of Crescent City v. Reddy, supra,* 9 Cal.App.5th at p. 466 [we must view the evidence in the light most favorable to the trial court's finding].) Therefore, we conclude there is substantial evidence of malice.

Davidson contends that because there is evidence contradicting Morgan's version of the events, a finding of malice is not supported by "[s]ubstantial evidence of clear and convincing evidence." In the trial court, the standard of proof for the punitive damages claim was clear and convincing evidence. (Civ. Code, § 3294, subd. (a).) "It is the law that whether evidence meets the 'clear and convincing' test is exclusively a matter for the determination of the trier of fact. Since the trial court, upon conflicting evidence, made such a determination the question is now closed on appellate review." (*Wurche v. Stenzel* (1969) 270 Cal.App.2d 499, 505; see also *Crail v. Blakely* (1973) 8 Cal.3d 744, 750.)

In other words, "on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however

7

slight, and disregarding the appellant's evidence, however strong.' " (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881.)  Thus, under the substantial evidence standard of review, we do not reweigh the evidence.  Instead, we resolve any conflicts in the evidence in favor of Morgan.  (*City of Crescent City v. Reddy*, *supra*, 9 Cal.App.5th at p. 466.)  Accordingly, the presence of conflicts in the evidence does not persuade us that the substantial evidence standard has not been met because, under that appellate standard, any conflicts are resolved in favor of Morgan.

Morgan contends we should follow the standard of review set forth in *Pulte Home Corp. v. American Safety Indemnity Co.* (2017) 14 Cal.App.5th 1086, 1125: " 'As in other cases involving the issue of substantial evidence, we are bound to consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment." [Citation.]  But since the [factfinder's] findings were subject to a heightened burden of proof, we must review the record in support of these findings in light of that burden.  In other words, we must inquire whether the record contains "substantial evidence to support a determination by clear and convincing evidence." ' "

We do not follow *Pulte* because it conflicts with California Supreme Court cases, such as *Crail v. Blakely*, *supra*, 8 Cal.3d at page 750:  "It is true that the trial court reasonably could have concluded that [the witness's] testimony failed to satisfy the 'clear and convincing standard referred to above.  That standard was adopted, however, for the edification and guidance of the trial court, and was not intended as a standard for appellate review.  'The sufficiency of evidence to establish a given fact, where the law

requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." (See also *In re Marriage of Saslow* (1985) 40 Cal.3d 848, 863; *National Auto. & Cas. Ins. Co. v. Industrial Acc. Commission* (1949) 34 Cal.2d 20, 25; *Beeler v. American Trust Co.* (1944) 24 Cal.2d 1, 7; *Stromerson v. Averill* (1943) 22 Cal.2d 808, 815; *Treadwell v. Nickel* (1924) 194 Cal. 243, 260-261.)

We follow our Supreme Court's precedent. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 456.) Therefore, we do not examine whether there is "[s]ubstantial evidence of clear and convincing evidence," because whether there was clear and convincing evidence was a question for the trial court. At this court, we examine whether there was substantial evidence. As set forth *ante*, we conclude the trial court's finding of malice is supported by substantial evidence.

2. Procedural History

After finding that Davidson and Pena acted with malice and oppression, the trial court scheduled an order to show cause re: Pena's and Davidson's incomes and net worth. Morgan's attorney, Robert Bartlett, said he served Davidson's attorney, Daniel Tripathi with "a notice in lieu of subpoena to compel attendance before the Court to bring documents on behalf of Claudia Davidson. And there were nine items that

9

[Bartlett] asked them to produce," but nothing was produced.  (Code Civ. Proc., § 1987, subds. (b)&(c).)[1]

Bartlett said he attempted to serve a subpoena upon Davidson's husband (Husband), but he had avoided service.  In one instance, Husband released the family's pitbull while the process server was attempting service, causing the process server to flee Davidson's house.  Bartlett also sent a subpoena to Husband's employer.  Bartlett had difficulty interpreting the financial income information sent by the employer.

Bartlett explained that a private investigator found a house loan modification recorded in August 2015 for $277,966.  Bartlett's research revealed Davidson's house was worth $514,011.  The private investigator found various vehicles in Davidson's or Husband's names: (1) a 2008 Ford truck; (2) a "2012 Hyundai four-door"; (3) a 1999 utility trailer; and (4) a 2007 Chevrolet truck.  Bartlett explained that Davidson and Husband were divorcing, so as to protect Husband's wages from being garnished.

Tripathi asserted that Bartlett's notice requesting documents was untimely. Tripathi contended Davidson had no assets and was unemployed.  Tripathi argued that Davidson's house was valued at $460,000, with a first loan of $260,000 and a second loan of $100,000.  Tripathi contended Husband made the down payment on the house "so essentially very little, if any, of the equity belongs to Mrs. Davidson.  She does have a Hyundai which is—also has a lien on it."

---

[1] All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

Bartlett contended that he served a timely notice in lieu of subpoena, but failed to include statutory citations. Then, two weeks later, he served another notice in lieu of subpoena with citations to section 1987, subdivisions (b) and (c). Bartlett contended that Tripathi never objected to the notices, and therefore, any argument about an untimely notice was forfeited.

### 3. ANALYSIS: BURDEN OF PROOF

Davidson contends that Morgan failed to produce evidence of Davidson's net worth, and therefore, the punitive damages award is not supported by substantial evidence.

"An award of punitive damages hinges on three factors: the reprehensibility of the defendant's conduct; the reasonableness of the relationship between the award and the plaintiff's harm; and, in view of the defendant's financial condition, the amount necessary to punish him or her and discourage future wrongful conduct." (*Kelly v. Haag* (2006) 145 Cal.App.4th 910, 914.) "The California Supreme Court has declined to prescribe any particular standard for assessing a defendant's ability to pay punitive damages [citation], but it has held that actual *evidence* of the defendant's financial condition is essential." (*Id.* at p. 915.)

"Under Evidence Code section 500 and in consideration of fundamental fairness, it is the plaintiff's burden to establish the defendant's financial condition." (*Kelly v. Haag*, *supra*, 145 Cal.App.4th at p. 916.) However, if a plaintiff is unable to provide the court with evidence due to the defendant's failure to comply with discovery obligations, then punitive damages may be awarded without the requisite evidence.

11

(*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 194; *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 610.)

Section 1987, subdivision (b), provides that, in lieu of a subpoena, the attorney for a party to a case may be served with a written notice requesting the party attend a court hearing. "The giving of the notice shall have the same effect as service of a subpoena on the witness." (§ 1987, subd. (b).)

Section 1987, subdivision (c), provides, "If the notice specified in subdivision (b) is served at least 20 days before the time required for attendance . . . it may include a request that the party or person bring with him or her books, documents, electronically stored information, or other things. . . . Within five days thereafter . . . the party or person of whom the request is made may serve written objections to the request or any part thereof, with a statement of grounds. Thereafter, upon noticed motion of the requesting party, accompanied by a showing of good cause and of materiality of the items to the issues, the court may order production of items to which objection was made, unless the objecting party or person establishes good cause for nonproduction or production under limitations or conditions."

Bartlett asserted the notices in lieu of a subpoena were timely served on Tripathi. Tripathi said he received only one untimely notice. It is possible the trial court credited Bartlett's assertion. If Bartlett's assertion were credited, then Tripathi/Davidson needed to comply with the notice to produce financial documents. (§ 1987, subd. (c).) Davidson's failure to comply with discovery excuses Morgan from providing evidence of Davidson's financial condition. (*Soto v. BorgWarner Morse TEC Inc.*, *supra*, 239

12

Cal.App.4th at p. 194.) In other words, Morgan's failure to produce evidence is excused because Davidson did not comply with her discovery obligations. Accordingly, we are not persuaded that Morgan failed to meet to his burden of proof.

4. *ANALYSIS: EXCESSIVE AWARD*

Davidson contends that if the $100,000 award of punitive damages were based upon Bartlett's presentation of Davidson's financial condition, then the award was excessive.

"While punitive damages must bear a reasonable relation to actual damages, no fixed ratio exists to determine the proper proportion. [Citation.] Rather, calculating punitive damages involves a fluid process of adding or subtracting depending on the circumstances. [Citation.] [¶] Within this framework, [the trier of fact has] wide discretion to determine what punitive damage award is proper. [Citation.] There is no simple formula for calculating punitive damages in that there is no particular sum that represents the only correct amount for such damages in any given case. Instead, there is a wide range of reasonableness for punitive damages reflective of the fact finder's human response to the evidence presented. [Citation.] On appeal, high ratios of punitive damages to compensatory damages, as much as 2000 to 1, have been affirmed." (*McGee v. Tucoemas Federal Credit Union* (2007) 153 Cal.App.4th 1351, 1362; see also *Adams v. Murakami* (1991) 54 Cal.3d 105, 112 [calculating punitive damages is an unscientific process].)

It is unclear on what basis the trial court made its punitive damages award. It is possible that, due to Davidson's failure to comply with discovery obligations, the trial

13

court entered a one-to-one punitive damages award: $100,000 in general damages and $100,000 in punitive damages. (*Pfeifer v. John Crane* (2013) 220 Cal.App.4th 1270, 1313 ["Generally, California courts 'have adopted a broad range of permissible ratios— from as low as one to one to as high as 16 to 1' "].) The trial court may have concluded that Davidson's failure to provide the requested financial documents meant a one-to-one ratio was the simplest resolution, given the lack of financial information.

The point here is that it is unclear what reasoning underlies the trial court's award of $100,000 in punitive damages. Because it is unclear, we do not examine whether the punitive damages award would be excessive if the award were based upon Bartlett's presentation of Davidson's financial condition. (See *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 [" 'we review the trial court's rulings and not its reasoning' "].)

B.     <u>DEPOSITION TRANSCRIPT</u>

1.     *PROCEDURAL HISTORY*

On November 17, 2016, Davidson's attorney, Tripathi, cross-examined Delgado. Tripathi sought to impeach Delgado with her prior deposition testimony. Bartlett objected saying, "Even more importantly, there's been no—there has been no foundation laid for having this deposition transcript read into the record. As a matter of fact, I read the local court rules that say, before you can use a deposition at any hearing, you have to lodge with the court at the beginning of the court day an original copy—or an original or certified copy of the deposition transcript . . . . I don't believe Mr. Tripathi has followed that—that procedure, Your Honor." The court said, "I do need to

14

have a copy of the deposition." Tripathi said, "I don't have them." The trial court permitted Tripathi to proceed with a copy of the deposition transcript that was in Tripathi's "trial binder."

On December 7, Tripathi cross-examined Morgan. During the cross-examination, Tripathi sought to impeach Morgan with Morgan's prior deposition testimony by referring to pages of the deposition transcript that were included in Tripathi's exhibit "book." The trial court said it had not been given a bound and certified copy of Morgan's deposition transcript.

Morgan's attorney, Bartlett, objected on the basis that there was no way to know if the transcript pages in the exhibit book had been altered. The trial court said, "I agree. There should be a bound copy. There should be a bound certified copy of the court reporter's transcript." Tripathi explained that he had "provided the court with a copy which includes the court reporter's signature."

Bartlett asserted that the problem was that the pages Tripathi sought to use were not bound with the rest of the reporter's transcript. Bartlett explained, "So what Mr. Tripathi did was he pulled documents out of the certified copy, and he made photo copies [*sic*] of it and is—and is trying to get those—the photocopies admitted as—as evidence. And you can't do it under the rules of evidence. The foundation is improper. And there's no way of knowing whether any of these pages were reproduced or altered or in any way changed from the original or a certified copy."

Tripathi argued that he was permitted to use a copied transcript. The trial court explained that it needed to be a certified copy, "not a—an office-produced copy."

15

Tripathi did not have a certified copy of the transcript with him. Tripathi requested a continuance to obtain a certified copy. The trial court denied Tripathi's request because a local rule provides, " 'Any party who intends to read from a deposition transcript during trial shall lodge the original transcript with the court no later than 9:30 on the day the witness is scheduled to testify.' " The trial court explained that the rule is "not new. It's been the rule for years and years." The trial court said that Tripathi knew from that rule that he needed to lodge a bound copy of the transcript with the court. The trial court denied Tripathi's request for a continuance and sustained Bartlett's objection to the use of the unbound pages of the deposition transcript.

Immediately after the lunch recess, when the cross-examination of Morgan was to resume, the following exchange occurred:

Mr. Tripathi: "Your Honor, we supplied the court with a copy from an e-mail of the deposition from the court reporter. We supplied the court copies of the e-mails that transpired between us and the court reporter where she indicated that she sent the original to Mr. Morgan and that she sent all other original documents to the former attorney. She then supplied a copy—this copy to us via e-mail along with the declaration that she sent the original to Mr. Morgan by certified mail.

"Mr. Bartlett: I object, Your Honor. First of all, the e-mails are hearsay. The document that's in the—that is in that binder that you have was sent by e-mail. They printed it off. According to what he's alleging, it was sent by e-mail. They printed it off their computer and stuck it in that binder. [¶] This is not a certified copy from the

16

court reporter. And it's not an original. I do not stipulate. He didn't lodge it this morning at 9:30. My objection still stands. And for him to provide hearsay e-mails—

"The Court: I'm not going to consider any e-mails.

"Mr. Bartlett: Thank you.

"The Court: So I have papers in a little binder. The court reporter did not provide this to you?

"Mr. Tripathi: The court reporter did provide it to me in e-mail, and we printed it off.

"The Court: I'm not inclined to consider it. Thank you."

On December 14, on rebuttal, Tripathi cross-examined Morgan. Tripathi had a certified copy of Morgan's deposition transcript. Tripathi said he had lodged the transcript with the trial court on December 13. Tripathi questioned Morgan about his deposition testimony. During the inquiry, the trial court ruled that Morgan's answers had little probative value when compared to the amount of time the questioning would consume. (Evid. Code, § 352.) The court directed Tripathi to "move on."

### 2. *ANALYSIS: STATUTE AND RULE*

Davidson contends the local rule requiring an original transcript to be lodged with the trial court contradicts section 2025.620.[2]

---

[2] Morgan contends this issue has been forfeited due to (a) Davidson's failure to explain what portions of the deposition transcript Davidson intended to use, and (b) Davidson's failure to explain how she was prejudiced by the alleged conflict between the code and the local rule. We choose to address the merits of the issue.

We apply the de novo standard in reviewing this purely legal issue. (*Snow v. Woodford* (2005) 128 Cal.App.4th 383, 393.) " 'It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] . . . ". . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice. [Citation.]" ' [Citation.] [¶] The scope of a court's inherent rulemaking authority has been discussed in various decisions [citation], and the outer limits of such authority are clear. A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the Constitution or case law." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351, fn. omitted.)

Section 2025.620, provides, in relevant part, "At the trial or any other hearing in the action, any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition, or who had due notice of the deposition and did not serve a valid objection under Section 2025.410, so far as admissible under the rules of evidence applied as though the deponent were then present and testifying as a witness . . . . [¶] . . . [¶] (e) Subject to the requirements of this chapter, a party may offer in evidence all or any part of a deposition, and if the party introduces only part of the deposition, any other party may introduce any other parts that are relevant to the parts introduced."

Riverside County Superior Court Local Rule 3401(9)(c) provides, "Any party who intends to read from a deposition transcript during trial shall lodge the original transcript with the court on the first day of trial."

The local rule addresses the precise situation that was presented in this case. When a party comes to trial with loose/unbound sections of a transcript, then the opposing party may object, arguing that the loose pages have been altered. The trial court can then address the objection by referring to the lodged transcript. The trial court can compare the allegedly altered loose pages to the lodged original transcript, in order to check for the alleged alterations. Thus, the local rule does not contradict the statute; rather, the local rule provides a means for the trial court to check the foundation of loose transcript pages when a party chooses to use unbound pages of a deposition transcript at trial.

Davidson contends the local rule contradicts the statute because the statute does not require an original transcript be lodged with the court. It is precisely because the statute has left this point open that the local rule does not conflict with the statute. If the statute required the lodging of an original transcript, then there would be no need for the local rule. If the statute disallowed the lodging of a transcript, then the local rule would contradict the statute. Currently, the statute makes no mention of how a court may proceed when a party chooses to use a portion of an uncertified transcript at trial. (§ 2025.620, subd. (e).) Riverside County Superior Court has chosen to fill that gap by requiring an original transcript be lodged with the court. Because there is a gap in the statute, there is not a contradiction between the local rule and the statute.

Davidson contends the local rule contradicts the statute by limiting a party's ability to use deposition testimony. Davidson gives the example that portions of depositions are often used in support of motions with only the declaration of counsel providing a foundation. We agree that practice does take place. (See Cal. Rules of Court, rule 3.1116(b) [only relevant transcript pages are to be included]; see also *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 523 [attorney declaration authenticating deposition excerpts].)

However, there are also situations where transcripts must be lodged. For example, a motion to compel requires the lodging of a certified copy of the relevant portions of the transcript at least five days prior to the hearing on the motion. (§ 2025.480, subd. (h).) Given that there are other circumstances in which a transcript must be lodged prior to the hearing or trial, we are not persuaded that the lodging of a transcript limits a party's ability to use deposition testimony. It is one more procedural step that must be taken, but it is not an obstruction to the use of deposition testimony.

Davidson gives a second example that the original transcript may be in the possession of opposing counsel thus making it difficult for the party wanting to use a deposition transcript to lodge the original. The trial court in the instant case said that a certified copy would be an adequate substitute for an original. In particular, the following exchange occurred:

The Court: "You must have an original.

"Mr. Tripathi: I believe, Your Honor, I'm allowed to have a copy.

"The Court: A copy is a certified copy. It says it's a copy, not a—an office-produced copy.

"Mr. Tripathi: I don't—

"The Court: *If you don't have that*, then proceed." (Italics added.)

The court continued with its comments, saying, "An original is a certified copy." The court also said, "If you don't have an original, you can use a copy."

The trial court's comments indicate that it was willing to accept a certified copy of the reporter's transcript. Therefore, the situation that Davidson describes is unlikely to occur—wherein opposing counsel refuses to release the original transcript, thereby rendering it impossible for opposing counsel to lodge the original transcript and read from the transcript at trial. It appears from the trial court's comments that, if, prior to trial, Davidson had lodged a certified copy of the transcript, then the certified copy would have been accepted. While the local rule would be clearer if it explicitly referenced an original *or* certified copy of the transcript, it appears that in practice "original transcript" is understood as including a certified copy. (See generally Evid. Code, § 1521 [secondary evidence rule, e.g., authenticated photocopies]; see also *In re Crooks* (1990) 51 Cal.3d 1090, 1100 [discussing photocopies in lieu of originals].) Accordingly, we are not persuaded that the local rule limits the scope of the statute.

### 3. *ANALYSIS: ABUSE OF DISCRETION*

Davidson contends that the trial court abused its discretion by not permitting Davidson to utilize the unbound pages of the deposition transcript when cross-examining Morgan.

21

"We review a ruling on evidentiary objections for abuse of discretion. [Citations.] We interfere with the lower court's judgment only if the party can show that no judge could reasonably have made the same judgment." (*O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1198-1199.)

As set forth *ante*, Riverside County Superior Court has a local rule requiring a party to lodge a deposition transcript with the trial court by the first day of trial, if the party will be reading from the transcript at trial. (Super. Ct. Riverside County, Local Rules, rule 3401(9)(c).) Davidson was informed of the local rule on November 17, 2016, when she sought to read a deposition transcript while cross-examining Delgado. Davidson had failed to comply with the local rule on November 17 and the court excused that failure by permitting Davidson to use a copy of the deposition transcript that was in an exhibit binder.

On December 7, Davidson sought to read from a deposition transcript while cross-examining Morgan. Davidson again failed to comply with the local rule. The trial court asked Davidson for a certified copy or original transcript, and Davidson responded, "I'd request a continuance to obtain a certified copy." Given that Davidson had been made aware of the local rule prior to December 7, and again failed to comply with the local rule, it was within the bounds of reason for the trial court to deny Davidson use of the deposition transcript. In sum, because Davidson twice did not comply with the procedural requirements for reading a deposition transcript at trial, the trial court did not abuse its discretion when, at the point of Davidson's second failure, it denied Davidson the opportunity to read from Morgan's deposition transcript.

Davidson contends there was no need for the trial court to follow the local rule because if Davidson altered the transcript, then opposing counsel would have alerted the trial court to the falsity. Davidson's argument illustrates exactly why the trial court needs to follow the local rule. If opposing counsel argues, in the middle of trial, that the deposition transcript used by Davidson is false, then the trial devolves into a hearing about what precisely was said at the deposition. Davidson argues that "A" was said during the deposition, while Morgan argues that "B" was said during the deposition. Rather than distract from the trial, the trial court required an original or certified copy of the transcript be filed so as to eliminate any need for a mini-trial about what may or may not have been said at the deposition. (See § 273, subd (a) [certified transcript is prima facie evidence of what was said]; see also *Elkins v. Superior Court*, *supra*, 41 Cal.4th at p. 1351 [trial court has authority to control the litigation to ensure the orderly administration of justice].) Accordingly, we are not persuaded that there was no need for the trial court to follow the local rule.

## C. INVASION OF PRIVACY

### 1. *PROCEDURAL HISTORY*

Morgan's complaint was filed on May 9, 2013. Davidson filed her cross-complaint on December 23, 2015. In regard to the statute of limitations for the invasion of privacy cause of action in Davidson's cross-complaint, the trial court said, "For the invasion of privacy cause of action there is no date set forth. And so there is a two-year statute of limitations for invasion of privacy. So the court would allow the—and Mr. Tripathi has claimed that it's a continuing tort, the invasion of privacy. So it would go

23

back two years to December 23rd, 2013, and continuing to [the] present, but not to any date prior to December 23rd, 2013."

Davidson argued that the invasion of privacy cause of action was reasonably related to the battery cause of action in Morgan's complaint, and therefore the relevant date for the statute of limitations should be the date Morgan's complaint was filed—not the date Davidson's cross-complaint was filed. Davidson contended the invasion of privacy cause of action should go back to 2011. The trial court asked how the invasion of privacy alleged in the cross-complaint was reasonably related to the battery alleged in the complaint. Davidson asserted all the allegations concerned "an ongoing feud."

The trial court explained that the battery alleged in the complaint was pled as a single incident. The trial court said, "I understand that there is a history, and we'll get to the history, but the history is not what the court is trying. The court is trying the issue of assault and battery . . . . [¶] . . . [¶] So the invasion of privacy is not related to the Complaint."

### 2. *ANALYSIS*

Davidson contends the trial court erred by limiting the invasion of privacy cause of action to events that occurred after December 23, 2013, because the tort began in 2009 and was ongoing.

Ordinarily, the statute of limitations begins to run when the tort is complete, i.e., when all the elements for the cause of action have been satisfied. However, there are exceptions to this general rule. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191-1192.) One of the exceptions is the continuing violation doctrine.

24

(*Id.* at p. 1197.) "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." (*Id.* at p. 1192.) The continuing violation doctrine is applicable where injuries result from a "series of small harms, any one of which may not be actionable on its own." (*Id.* at p. 1197.) The party asserting the doctrine must allege "a pattern of reasonably frequent and similar acts [that] may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." (*Id.* at p. 1198.)

The applicable statute of limitations is determined by examining the facts alleged in the cross-complaint. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22; *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165; *City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 889.) We apply the de novo standard of review. (*Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 353; *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 260-261.)

In the cross-complaint, Davidson alleged she moved into her home in October 2009. Davidson further alleged, "[Morgan] will stand along the shared property line while filming and taking pictures of the children, without permission, while making vulgar comments and gestures. This occurs often when [Davidson's] preteen daughter . . . makes use of her parent's trampoline." In the invasion of privacy cause of action, Davidson alleged, "[Morgan] intentionally intruded upon Mrs. Davidson's

25

property and the privacy of her children at play, through filming and photographing the children, without permission."

Davidson does not allege how often the filming/photography occurred, when the filming/photography occurred, or how the discreet filming/photography events were insufficient on their own to be actionable. Davidson also fails to allege that the wrongful course of conduct became apparent only through the accumulation of a series of harms. Therefore, Davidson's cross-complaint fails to allege "the presence of factors that might warrant application of the continuing violation doctrine." (*Aryeh*, *supra*, 55 Cal.4th at p. 1198.) In sum, the trial court did not err.

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

CERTIFIED FOR PUBLICATION

MILLER _____
                                                                                    J.

We concur:


McKINSTER _____
                    Acting P. J.


CODRINGTON _____
                                J.

26