[Civ. No. 6661. Second Appellate District, Division One.—September 18, 1931.]

DAIRY FOOD STORE, INC., Appellant, v. MYER L. ALPERT et al., Respondents.

Thomas A. Sanson for Appellant.

Frank C. Dunham for Respondent.

BISHOP, J., *pro tem.*—We approve the conclusion reached by the trial court, that the defendants were released from their agreement to lease to plaintiff a portion of a building to be erected, because not the building contemplated but a different one was constructed, the change being due to causes over which the parties had no control. The agreement in question was written by C. H. Gibson, plaintiff's president, and by him presented to the defendants for their signatures. In so far as it need be before us, it reads:

"June 22, 1927.

"Mr. C. H. Gibson,

"Pasadena, California.

"Dear Sir: We hereby offer to you 12 feet, inside measure to run 75 ft. southerly along the West wall of the building we are to build on the C. H. Baker Property on the corner of Colorado Street and Garfield Avenue, Pasadena. . . . $350.00 to be paid upon the signing of the contract for building and $450.00 to be paid upon the signing of the lease. Completion to be as soon as possible.

"(Signed)  M. L. ALPERT.

"ESTHER B. ALPERT.

"Accepted C. H. GIBSON."

Whatever Gibson understood, at the time he drew and "accepted" this offer, about the identity of the intending builder, whether it was the defendants, as the offer would indicate, or Baker, as was the fact, he did know that the plan was to erect the building on the land of Baker, and that the source of defendants' rights in the building would be a lease from Baker. He also knew, as did every party to the transaction, that the city of Pasadena was about to open a street which would cut off a part of the lot upon which the projected building was to be placed. At the time the offer was made and accepted it was quite definitely understood that the width of the new street would permit a building with a frontage of forty-six feet, and it was this building which was then contemplated. A change in the city administration was followed by a change in the street program, resulting in a wider street by eight feet, making impossible the erection of a forty-six foot building.

The lease between Baker and the defendants was canceled, and the defendants notified plaintiff that their agreement with it was at an end. A building was built to conform to the narrowed lot, however, and the defendants and Baker entered into a new lease relative to it. Plaintiff and defendants entered into negotiations, but not into a new contract. Standing on the June 22d agreement, plaintiff seeks in this action to recover damages suffered by the refusal of the defendants to lease to it premises in the building which was erected, contending that as the land taken was from the east side of the building, its twelve feet along the west side remained unaffected.

Many objections were interposed to the proof of the facts just narrated on the ground that it was an attempt to vary the terms of a written agreement. This was not its object or effect. Rather it was proof that the subject matter of the lease, which the parties agreed to enter into, never came into existence, and hence the parties were excused from carrying out their agreement to enter into a lease. The principle which controls if, in truth, the subject matter of the executory agreement was nonexistent without the fault of defendants when performance was due, is, we find, not in doubt. "It is . . . well settled that where performance depends upon the existence of a given thing, and such existence was assumed as the basis of the agreement, performance is excused to the extent that the thing ceases to exist or turns out to be nonexistent." (*Mineral Park Land Co.* v. *Howard,* (1916) 172 Cal. 289, 292 [L. R. A. 1916F, 1, 156 Pac. 458]. See, also, the note following the report of the Howard case in L. R. A. 1916F, p. 52 et seq., and the note, 12 A. L. R. 1274.) This quotation from the opinion in *Leventritt* v. *Cowell,* (1913) 21 Cal. App. 597, 602 [132 Pac. 627, 629], is of significance: "Zellerbach & Sons had contracted, tentatively at least, to lease a building to be commenced within six months from June 13, 1904. This building had been almost completed when it was destroyed. Its destruction terminated the contract for its leasing. (Civ. Code, sec. 1933.)" Performance of an agreement to let space in a building occupied by the lessor-to-be is excused by the burning of the building, and the expectant lessee cannot complain because it was not granted space in another building subsequently

occupied. (*Martin etc. Co.* v. *Siegel, Cooper & Co.*, (1908) 237 Ill. 610 [20 L. R. A. (N. S.) 1114, 86 N. E. 1104].)

Our problem narrows down, then, to this question: Did there come into existence "12 feet, inside measure . . . of the building we are to build on the C. H. Baker property?" Admittedly, if the plans had been altered in an immaterial or insubstantial particular, neither party could withdraw from the agreement to lease by saying, this is not the building our contract referred to. Equally true, it seems to us, either party to a contract could properly insist that a building with a fifteen-foot frontage was not the building referred to in an agreement which related to one with a hundred-foot frontage. The point at which the alteration in a plan passes from the inconsequential to the vital, so that the product of the final plan ceases to be the project of the original plan, is one of fact, peculiar to each case. We cannot say that the trial court was not justified in determining that the change in street plans made it impossible to erect the building contemplated, for a store with thirty-eight feet frontage may be said to be substantially different from one with a forty-six foot frontage. If that building was not erected, then defendants were properly held not to be required to respond in damages for a failure to lease to plaintiff space in it.

The judgment is affirmed.

York, J., concurred.

Houser, Acting P. J., dissented.