[Civ. No. 43323. Second Dist., Div. Five. Jan. 14, 1975.]

EDWARD W. FRENCH et al., Plaintiffs and Appellants, v.
CONSTRUCTION LABORERS PENSION TRUST
FOR SOUTHERN CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Lewis E. Taliaferro and Lawrence H. Eisenberg for Plaintiffs and Appellants.

Latham & Watkins, John S. Welch, Joseph A. Wheelock, Jr., William J. Meeske and James Wolf for Defendants and Respondents.

## OPINION

**LORING, J.**\*—Edward W. French (French), Rudolf Maier (Maier), and Webster Alvin Tavenner (Tavenner), (collectively petitioners) filed in the superior court a petition for writ of mandate against Construction Laborers Pension Trust for Southern California (Trust), Fund Administrative Associates, Inc., a corporation (Administrator), and 16 individuals[1] (Trustees), who were trustees of a pension trust, to compel continued payment of pensions to which petitioners were allegedly entitled under a pension fund plan entitled "Construction Laborers Pension Trust for Southern California" (contract), an alleged copy of which was attached to the petition as Exhibit A. The court issued an alternative writ. All of the respondents (Trust, Administrator, and Trustees) answered. After trial the court made findings in favor of respondents and against all petitioners, discharged the alternative writ and entered judgment in favor of all respondents and against all petitioners with costs. Petitioners appeal from the judgment.

### CONTENTIONS

Stated generally,[2] appellants contend that the court erred:

I   In failing to hold that respondents' right to rescind was barred by the statute of limitations.

II   In finding that no contract had ever been entered into because of a mutual mistake of fact.

III   In finding that there was only an attempted offer and an attempted acceptance and therefore no contract.

IV   In failing to give effect to individual applications by petitioners.

V   In failing to find, as a matter of law, that respondents had waived their right to rescind.

---

\*Assigned by the Chairman of the Judicial Council.

[1] The sixteen individuals were: "JAMES CROWELL; R. C. GALLYON; C. IRWIN T. JOHNSON; ROBERT KRUSE; G. R. MORRISON; ROBERT H. RINGER; HERB SMITH; REED SPRINKEL; SAL APARICIO; DONALD E. GRAVES; JOE LARA; WILLIAM R. MCCLAIN; MANUEL RENTERIA; J. L. SMITH; EDGAR A. WATKINS; RAY M. WILSON."

[2] Each general contention of appellants is supported by several sub-contentions which we do not detail since in the aggregate they consist of four pages.

VI   In concluding that petitioners were guilty of unclean hands.

VII   Because findings were inadequate, inconsistent, and defective.

VIII   In compelling Esther Tavenner to testify against her husband.

## FACTS

Appellants concede that (except for a few instances of alleged admitted perjury) there is no dispute on the facts.[3] In its findings the court found that Maier was president, member of the board of directors, and fifty percent stockholder of M & M House Moving Co., Inc., (M & M) which was organized in 1955. M & M was a specialty contractor engaged in the business of moving houses. On October 9, 1967, Maier sold his stock to French. Tavenner was treasurer, member of the board of directors, and 50 percent stockholder of M & M until June 14, 1971, when he sold his interest to Roy Kechter (not a party to this action). French was superintendent of M & M until June 14, 1967, when he purchased Maier's 50 percent stock interest. Prior to September 3, 1963, M & M was a member of Associated General Contractors of California, Inc. (AGC), a trade association for general and specialty contractors. During its membership in AGC, M & M was a party to a collective bargaining agreement with Housemovers Local Union No. 923, and therefore was required to, and did make contributions on behalf of its "jobsite employees" (union members) to a pension fund created by written agreement (Exhibit A to petition) under which Trust owned the trust assets which were administered by Trustees who employed Administrator, as agent, to actively manage the trust assets. The pension trust was established October 16, 1962, under the provisions of the Taft-Hartley Act, 29 United States Code, section 186. Under the terms of the collective bargaining agreement M & M was obligated to, and did continue to make pension contributions on behalf of its jobsite employees after M & M resigned from AGC. M & M rejoined AGC in November, 1971. In 1966 (at a time when M & M was not a member of AGC) the trust was amended to provide expanded coverage and to permit employers who were members of the contractor associations who were signatories to the trust[4] to cover their office, sales, administrative, executive, supervisory, and other "non-jobsite employees" by inclusion in the pension trust. In February 1967, Administrator gave written

---

[3]We will, therefore, quote some of the more material findings for background information.

[4]There were several such associations other than AGC.

notice (including copies of the amended trust agreements) to contractor associations (who were signatories to the trust) of such amendment, and that they were eligible to apply for membership under the expanded benefits. Such notice and amendments also went to M & M by reason of the fact that its name still appeared on Trust's records since M & M was making contributions to the pension fund on behalf of its jobsite employees notwithstanding the fact that it was no longer a member of AGC and M & M was therefore not entitled to provide such expanded benefits to its non-jobsite employees. M & M knew it was not eligible for such expanded benefits. On or about March 20, 1967, M & M applied in writing for participation in the non-jobsite program for the benefit of French, Maier, Tavenner, and William A. Leicht (not a party to these proceedings). Leicht was a certified public accountant and was not an employee of M & M but an independent contractor. The application contained a false statement that M & M was a member of AGC. It was signed by Maier at the direction of Tavenner and French. Maier had no reasonable basis for making such statement but did not wilfully or intentionally misrepresent. The Administrator had been instructed not to attempt to verify the accuracy of application statements. He did check and found that M & M was current on its contributions to the pension fund on behalf of the jobsite employees. In the mistaken belief that M & M was a member of AGC, Administrator notified M & M that its application had been accepted effective April 1, 1967. Such application would not have been accepted or such notice given if Administrator had known that M & M was not a member of AGC. M & M contributed $8,355.85 to the pension fund on behalf of its non-jobsite employees, Maier, Tavenner, and French, and as soon as they were eligible to do so they retired and collectively received $44,518.50, in benefits from the pension fund. In August 1971, respondents became aware for the first time that M & M had not been a member of AGC at the time it had been accepted in the pension plan as amended to include non-jobsite employees. On April 27, 1972, after Trustees considered the problem at several meetings (some of which were attended by petitioners), Administrator notified petitioners that their pensions were suspended, and on May 15, 1972, Trustees notified petitioners that the agreement accepting them into the plan was rescinded, offered to return all contributions received, and demanded return of pension benefits paid.

The court made additional findings that in August 1967, M & M made contributions to the amended pension plan for the period 1962 to 1967, on behalf of a Buford Mitchell, a former partner of Maier's who was not and never had been an employee of M & M, and that M & M did not

make contributions on behalf of Hester French (wife of French), and Esther Tavenner (wife of Tavenner), who were, in fact, employees of M & M. (The reason for such failure is immaterial but apparently it was because M & M knew they would not be employed the 15-year minimum period required to qualify for pension benefits.) At the direction of petitioners, Esther Tavenner filed written monthly statements during the period April 1967 to March 1971, for M & M listing the M & M employees on whose behalf contributions were made (which included petitioners, Mitchell and Leicht) representing under penalty of perjury that each had been paid for 160 hours of work during the month and that there were no other employees on whose behalf M & M was required to make contributions. Maier applied for pension benefits in October 1967, but was advised he was ineligible because he had not worked 15 years as required by the plan. Maier returned to M & M but received no compensation or salary and reapplied for pension in February 1970.

## DISCUSSION

■ Respondents' right to rescind by notice without judicial proceedings is not barred by the statute of limitations. Statutes of limitation act as a bar to actions or proceedings in courts. (31 Cal.Jur.2d, Limitation of Actions, § 9, pp. 436-437.) In *Stiles* v. *Bodkin,* 43 Cal.App.2d 839 [111 P.2d 675], the court said at page 844: "Plaintff suggests that defendants' rights are barred by laches and the statute of limitations. A similar contention was held to be without merit in *J. B. Colt Co.* v. *Freitas,* 76 Cal.App. 278 [244 Pac. 916], where the court said: 'Where fraud is relied upon as a defense merely "neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court, and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud." (*Estate of Cover,* 188 Cal. 133, 140 [204 Pac. 583, 587].) "Where no affirmative relief is sought, it is not necessary for him to have exercised an existing right to rescind." (12 Cal.Jur. 786; *Simon Newman Co.* v. *Lassing,* 141 Cal. 174 [74 Pac. 761.].) "There are three methods by which, in cases like the present, a party defrauded may obtain relief: 1. Cancellation or rescission, etc.; . . . 2. Affirmative relief by an action to

recover compensation for the injury sustained by the fraud; . . . 3. Defensive relief, whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability." (*Toby* v. *Oregon Pacific R. R. Co.,* 98 Cal. 490, 498 [33 Pac. 550, 553]; *Field* v. *Austin,* 131 Cal. 379, 382 [63 Pac. 692].)' " See also, 2 Witkin, California Procedure (2d ed. 1970) Actions, section 238, pages 1095-1097. **(2)** The statute of limitations acts as a shield not as a sword. (31 Cal.Jur.2d, Limitation of Actions, § 27, pp. 454-455.)

Petitioners' contention that there is no evidence to support the finding that the contract was entered into under a mutual mistake of fact is not sustainable. Maier testified he thought M & M was a member of AGC. Petitioners' counsel stipulated that M & M's name did not appear on AGC's membership roster in 1967. ■ It is clear from the membership requirements, the form of application and the correspondence, that Trust and Administrator believed that M & M was a member of AGC at the time its application was accepted. The documents clearly put M & M on notice that membership in AGC was a prerequisite to membership in the modified pension plan, and M & M should have known that it was not a member of AGC. There was substantial evidence which clearly supports the conclusion of the trial court that M & M and Administrator and Trust clearly believed at the time M & M was accepted into membership in the modified pension plan that M & M was eligible for membership by reason of its membership in AGC, and the further finding that M & M was not entitled to membership in the plan because it was not then a member of AGC. On the basis of such findings the court was justified in concluding that Trust and Administrator were legally entitled to rescind the agreement accepting M & M's membership. ■ Such right of rescission was not lost by lapse of time. It was not lost in this case specifically since the right of rescission was exercised within a reasonable period after actual discovery of the mistake. The right of rescission for mutual mistake is not lost even though Trust and Administrator may have been negligent in failing to discover the mutual mistake at an earlier date. The rule is stated in *Van Meter* v. *Bent Construction Co.,* 46 Cal.2d 588, 593-595 [297 P.2d 644], as follows: ". . . It is the general rule that the negligence of a plaintiff is not a defense where the defendant with intent to deceive has falsely represented as a fact something which he does not believe to be true. (*Hefferan* v. *Freebairn,* 34 Cal.2d 715, 718-721 [214 P.2d 386]; *Seeger* v. *Odell,* 18 Cal.2d 409, 414 et seq. [115 P.2d 977, 136 A.L.R. 1291]; see *California Trust Co.* v. *Cohn,* 214 Cal. 619, 626 et seq. [7 P.2d 297].) Although defendants were guilty of fraud as defined in subdivision 2 of section

1572 of the Civil Code, their fraud was not wilful since their representations were believed by them to be true and were not made with intent to deceive. Defendants contend that their conduct, though characterized by the statute as fraudulent, was merely negligent and that, by analogy to the rule in tort cases, plaintiff's contributory negligence is as a matter of law a complete defense. There is an element of carelessness in nearly every case of mistake, and it is obvious that the unqualified application of the principle urged by defendants would result in the virtual destruction of the equitable remedies for relief from mistake.

"It is settled that, even in the absence of any misrepresentation, the negligent failure of a party to know or discover facts as to which both parties are under a mistake does not preclude rescission or reformation because of the mistake. (*National Auto. & Cas. Ins. Co.* v. *Industrial Acc. Com.,* 34 Cal.2d 20, 24-26 [206 P.2d 841]; *Los Angeles etc. R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 25-28 [87 P. 1029]; *Mills* v. *Schulba,* 95 Cal.App.2d 559, 564-565 [213 P.2d 408]; *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580, 597-598 [116 P.2d 465]; see Rest., Contracts, § 508; McClintock on Equity (1948), pp. 246-247, 265-266; 3 Pomeroy, Equity Jurisprudence (5th ed., 1941), § 856b, pp. 340-341; 12 Am.Jur., pp. 624-625; *cf. M.F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 702 [235 P.2d 7]; *Brunzell Const. Co.* v. *G. J. Weisbrod, Inc.,* 134 Cal.App.2d 278, 286 [285 P.2d 989].) Some cases have said that a plaintiff will not be denied rescission or reformation because of lack of care unless his conduct amounts to gross negligence or the neglect of a legal duty. (*Los Angeles etc. R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 28 [87 P. 1029]; *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580, 597-598 [116 P.2d 465].) These terms are perhaps unfortunate and have caused some confusion. The theory that there are degrees of negligence has been generally criticized by legal writers, but a distinction has been made in this state between ordinary and gross negligence. (See *Donnelly* v. *Southern Pac. Co.,* 18 Cal.2d 863, 871 [118 P.2d 465].) Gross negligence has been said to mean the want of even scant care or an extreme departure from the ordinary standard of conduct. (See *Kastel* v. *Stieber,* 215 Cal. 37, 47-51 [8 P.2d 474]; Prosser on Torts (1941), p. 260.) A breach of legal duty may, of course, consist of either ordinary negligence or gross negligence (Harper on Torts (1933), p. 170), but it has been held that ordinary negligence does not constitute the neglect of a legal duty as that term is used in section 1577 of the Civil Code (*Los Angeles etc. R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 25-28 [87 P. 1029]; *Hanlon* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580, 597-598 [116 P.2d 465].)

"There is even more reason for not barring a plaintiff from equitable relief where his negligence is due in part to his reliance in good faith upon the false representations of a defendant, although the statements were not made with intent to deceive. (*Cf. Shearer* v. *Cooper,* 21 Cal.2d 695, 703-704 [134 P.2d 764]; *Fleury* v. *Ramacciotti,* 8 Cal.2d 660, 662 [67 P.2d 339].) A defendant who misrepresents the facts and induces the plaintiff to rely on his statements should not be heard in an equitable action to assert that the reliance was negligent unless plaintiff's conduct, in the light of his intelligence and information, is preposterous or irrational." (Fns. 2 and 3 omitted.)

In 1 Witkin, Summary of California Law (8th ed. 1973) Contracts, section 292, pages 245-246, it is stated: "If both parties are mistaken, and neither is at fault or both are equally to blame, the mistake may prevent formation of the contract.

"Thus, both parties may have a different understanding as to the *identity of the subject matter.* In the famous case of *Raffles* v. *Wichelhaus,* 2 H. & C. 906, there was an agreement to buy goods arriving on the ship 'Peerless,' and there were two steamers of that name, each party having in mind a different ship. No contract resulted. (See *Barfield* v. *Price* (1871) 40 C. 535, 542; 24 So. Cal. L. Rev. 490; 3 Corbin §§ 599, 608; 13 Williston 3d §§ 1536, 1541 et seq.; 17 Am.Jur.2d, Contracts § 143.)

"Similarly, where the subject matter, or something essential to performance, ceases to exist before the agreement is reached, there is no contract. If the essential thing is destroyed after the agreement is made, a contract is formed, but its performance is excused by impossibility. (See Rest., Contracts §§ 49, 456; *Dairy Food Store* v. *Alpert* (1931) 116 C.A. 670, 672, 3 P.2d 61; 3 Corbin § 600; 13 Williston 3d § 1559 et seq.; 17 Am.Jur.2d, Contracts §§ 144, 404 et seq.; infra § 609.)"

Civil Code section 1577[5] does not change the result. Trust and Administrator were under no legal duty to investigate M & M's eligibility. Section 5.19(c) of the trust agreement provided: "§ 5.19(c) The Trustees shall incur no liability and shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be

---

[5]Civil Code section 1577 reads: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

"2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained."

■ The court was likewise justified in concluding that Trust and Administrator did not waive such right of rescission. Whatever the law may be as between individual private contracting parties, it must be borne in mind, that we are here considering a trust in the nature of a quasi-public trust which had been entered into under provisions of federal law by labor unions and employer associations representing large numbers of persons. Paragraph 4.05 of the trust provided: "§ 4.05 Neither the Association, any Individual Employer, the Union, any Local Union, any Employee, Retired Employee or beneficiary under the Pension Plan nor any other person shall have any right, title or interest in or to the Fund other than as specifically provided in this Trust Agreement or in the Pension Plan."

The Trustees of such a trust had no power or authority to alter, change, or modify such trust instrument by unilateral act without the concurrence of the Trustors—the signatory labor unions and employer associations. If the Trustees were guilty of wrongdoing in their dealings with third persons (M & M) (we do not conclude that they were) which resulted in damage to such third persons, the Trustees may or may not have personal liability to such third persons but the Trustees may not effect what amounts to an amendment of the trust agreement relating to qualifications for membership by unilateral act even though it may be characterized as a waiver or estoppel. In *Moglia* v. *Geoghegan* (S.D.N.Y. 1967) 267 F.Supp. 641, affd. (2d Cir. 1968) 403 F.2d 110, the Trustees of a pension trust established under the Taft-Hartley Act refused a pension to a widow of an alleged "employee" whose employer had failed to make contributions to the trust. Under the trust definition of employees the widow's husband was not an employee. The widow argued that the trust and law should be interpreted to protect "employees." The court pointed out that the trustee owed duties to the beneficiaries of the trust and that it could not jeopardize their rights by, in effect, changing the terms of the trust to include people not eligible, that even if the employer had made contributions on behalf of the husband and the trustees acting in a grossly negligent manner had accepted them, that such conduct could not change the trust instrument and extend coverage to people not covered.

In addition to lack of authority or capacity by trustees of a quasi-public trust to effect a change in trust terms by their unilateral act (not concurred in by the trustors) federal law itself, 29 United States Code Annotated, section 186(c)(5) required a written agreement between an employer and the trust which specified the manner of contributions. By reason of its nonmembership in AGC during the period 1967 to 1971, M & M was not a party to any written agreement during such period. It, therefore, was not eligible under federal law. If M & M had been a member of AGC such requirement would have been satisfied by reason of the fact that AGC was a signatory to such written agreement. As was said by the federal court in *Moglia* v. *Geoghegan, supra,* at pages 646-647, and 648: "The conditions imposed on the parties to the Trust Agreement Plan and the Rules and Regulations to enforce these conditions, are reasonable and fair, and drafted to adhere strictly to the statutory requirements. The background of this law and the cases interpreting it, leave no doubt that, if there is one essential element without which these funds cannot lawfully exist, it is that there be a written agreement specifying the source and amounts of money to be paid into and to be disbursed from the Fund. It was the absence of just such a formal agreement identifying and allocating the moneys being collected from employers by Union representatives ostensibly for the employees' 'Welfare Fund', which outlawed those payments. Congress recognized that the effect of such gifts, if not their very purpose, was to destroy the impartiality of the representative of the employees, whose interests often conflicted with those of the employer. United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335; International Longshoremen's Association v. Seatrain Lines, 326 F.2d 916 (C.A.2, 1964).

"This is not, as plaintiff would argue, a technical provision or regulation, but the sine qua non of the payments permitted to be made.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"It follows from this that plaintiff's theory of estoppel will not lie to compel the Trustees to continue violating the law, assuming that the other elements necessary to constitute an estoppel in law were present and which appear unlikely in view of the fact that, by receiving the booklets describing the Pension Fund and 'eligible employees', plaintiff's husband was constantly put on notice that his employment had to be covered by a collective bargaining agreement before he could enjoy the benefits of the Fund."

Finally, there is one provision of the trust instrument which is fatal to

petitioners' claims and contentions. Paragraph 7.08 of the trust instrument reads: "§ 7.08 No Employee, Retired Employee or other beneficiary shall have any right or claim to benefits under the Pension Plan, other than as specified in such Plan. Any dispute as to eligibility, type, amount or duration of benefit shall be resolved by the Board of Trustees under and pursuant to the Pension Plan, and its decision of the dispute shall be final and binding upon all parties thereto. No action may be brought for benefits under the Pension Plan or to enforce any right thereunder until after the claim therefor has been submitted to and determined by the Board, and thereafter the only action that may be brought is one to enforce the decision of the Board. Neither the Associations, any Individual Employer, the Union, any Local Union, nor any of the Trustees shall be liable for the failure or omission for any reason to pay any benefits under the Pension Plan."

In our view, by such language the signatories to the Trust intended to and did, in legal effect, constitute Trustees as the exclusive authority to interpret the agreement and determine disputed rights of claimants under the plan; subject only to correction by a court when they act arbitrarily or capriciously. (*Collins* v. *United Mine Wkrs. of Amer. Wel. & Ret. F. of 1950,* 439 F.2d 494 [141 App.D.C. 387]; *Kosty* v. *Lewis,* 319 F.2d 744, 747 [115 App.D.C. 343], cert. den., 375 U.S. 964 [11 L.Ed.2d 414, 84 S.Ct. 482]; *Pete* v. *United Mine Wkrs. of Amer. Wel. & Ret. F. of 1950,* 352 F.Supp. 1294.) By such terms the decision of such Trustees is final, binding, and conclusive of the rights of petitioners in the absence of a showing of facts now shown here.

Although the trust instrument does not denominate the Trustees as a board of arbitrators, in the technical sense, the result is substantially the same at least insofar as the binding effect of their decision is concerned. In light of the express terms of such trust agreement we conclude that if any unsuccessful claimant has any rights, he should be required to make some kind of a showing comparable to that specified by Code of Civil Procedure, section 1286.2 (5 Cal.Jur.2d, Arbitration and Award, §§ 58-65, pp. 139-145). No such showing is here made.

As was said in *Park* v. *Board of Trustees,* 21 Cal.App.3d 630, 633 [98 Cal.Rptr. 859] (which involved a trust instrument with substantially the same provisions): "It is now settled that in the absence of a claim that a board such as respondent here acted arbitrarily, capriciously, or in bad faith in reaching its decision, such action is final and not subject to

judicial review. . . . [¶]"Appellant neither pleaded nor offered any proof in the court below to support a claim of arbitrariness on the part of respondent. Such a claim may not be raised for the first time on appeal."

Although petitioners alleged in their petition for writ of mandate herein that they attached a copy of the Pension Plan, as Exhibit A thereto, the copy of the plan which they attached to their petition (Exhibit A) omitted paragraph 7.08. The petition herein therefore not only did not allege or prove facts sufficient to overcome the legally binding effect of paragraph 7.08, the petition conveniently ignored even the existence of paragraph 7.08. Not only did M & M play fast and loose with the Trustees of the pension trust, but petitioners played fast and loose with the trial court herein. Appellants do casually argue, without citation of authorities, that the omission of provisions in the pension agreement for a hearing denies due process of law, but that objection may not be raised for the first time on appeal.  ■  Since the reference is so casual and no authorities are cited, we treat the point as waived. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4393; *Duncan* v. *Ramish,* 142 Cal. 686, 689 [76 P. 661].)

■  Assuming without deciding that Trustees violated petitioners' rights to due process in some way, the fact is that they had a full day in court (17 to be precise) and the evidence clearly demonstrates that they were (to use the current vernacular) engaged in a "rip-off" of the pension fund, they sought to obtain benefits that they were not legally entitled to, and they knew they were not legally entitled to—they sought to take advantage of a mistake—they tried to include their friends (William A. Leicht and Buford Mitchell) who could not have been considered eligible under any circumstances, and they wilfully failed to make contributions on behalf of employees (Mrs. French and Mrs. Tavenner) for whom they would have been required to make contributions if M & M was properly a member of the plan thereby attempting to deprive the fund of money it would have been entitled to if M & M had lawfully been a member. After a full day in court, and complete due process, petitioners received far more consideration than their conduct deserved. To say that the court was not justified in finding them guilty of unclean hands is to deprive the court of the power to label the obvious. No person may take advantage of his own wrong (Civ. Code, § 3517). (*Birney* v. *Birney,* 217 Cal. 353 [18 P.2d 672]; *Potrero Homes* v. *Western Orbis Co.,* 28 Cal.App.3d 450, 458 [104 Cal.Rptr. 633]; *Reynolds* v. *Roll,* 122 Cal.App.2d 826 [266 P.2d 222], cert. den., 348 U.S. 832 [99 L.Ed. 656,

75 S.Ct. 55]; and *Bowman* v. *Bowman,* 125 Cal.App. 602 [13 P.2d 1049, 14 P.2d 558].)

In sum total petitioners, in effect, seek to enforce the alleged beneficial provisions of the Trust and conveniently ignore those provisions which preclude their recovery herein. ■ Where the trust agreement provides a remedy for settling disputes under it, its terms must be complied with. (See, *Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558 [277 P.2d 464]; see also, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 177, pp. 1041-1042.) Furthermore, no showing is made that petitioners had any evidence which petitioners would have offered to Trustees which would have changed the result. Nothing comparable to an offer of proof was made at any time or place.

This conclusion makes it unnecessary to discuss additional contentions (such as respondents' contention that mandate is not a proper remedy against private trustees who are not public officials), and petitioners' contention that error was committed in compelling Mrs. Tavenner to testify, since the foregoing conclusion precludes recovery and requires affirmance regardless of any conclusion we might reach on other issues.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 11, 1975, and appellants' petition for a hearing by the Supreme Court was denied May 1, 1975. Mosk, J., was of the opinion that the petition should be granted.