Filed 2/11/21  ReadyLink, Inc. v. Integrated Healthcare Holdings, Inc. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| READYLINK, INC., | |
| Plaintiff and Appellant, | G057280, G057382, G057581 |
| v. | (Super. Ct. No. 30-2013-00669286) |
| INTEGRATED HEALTHCARE HOLDINGS, INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from judgments of the Superior Court of Orange County, Frederick Paul Horn, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Vaughn & Vaughn, Donald A. Vaughn and Evan J. Topol for Defendants and Appellants.

Klein & Wilson, Gerald A. Klein and Brian M. Kelly for Plaintiff and Appellant.

\*        \*        \*

Defendants are Integrated Healthcare Holdings, Inc. (Integrated) and the four hospitals it operates in Orange County. Integrated is the hospitals' alter ego. Plaintiff ReadyLink, Inc., a Nevada corporation, is a staffing agency that contracted with the four hospitals to provide temporary nurses.[1] ReadyLink, Inc. sued defendants for breach of contract and fraud, arising from defendants' admitted failure to pay it for services provided. Two years into this lawsuit, ReadyLink, Inc. discovered it was not a party to the relevant contracts. Instead, the contracts identified a variety of similarly named ReadyLink entities as parties. After a bench trial, the trial court found the parties had intended to name ReadyLink, Inc. as the contracting party but had not done so due to mutual mistake. It granted ReadyLink, Inc.'s request to reform the contracts to insert itself as the contracting party.

In a later phase of trial, a jury found the hospitals had breached their respective contracts but that only Integrated had engaged in fraud. In allocating ReadyLink, Inc.'s damages to the individual defendants on the verdict form, the jury wrote zeros next to each hospital and entered the entire damage award of $377,303.73 next to Integrated. From this, defendants insisted the jury found the hospitals' breaches did not damage ReadyLink, Inc. and they objected to the entry of judgment against the hospitals. The trial court rejected this argument and entered judgment against them and Integrated. Likewise, it found that ReadyLink, Inc. had prevailed against the hospitals on the breach of contract claims and ordered the hospitals and Integrated, as their alter ego, to pay ReadyLink, Inc. over $1.2 million in attorney fees per the contracts.

Defendants appeal the judgment and attorney fees order on two grounds. First, they contend the trial court erred in granting reformation because there was no mutual mistake. They assert the evidence shows defendants were unaware that

---

[1] We use the term ReadyLink, Inc. to refer to the specific Nevada corporation. We use the terms "ReadyLink company" and "ReadyLink entities" to generally refer to the ReadyLink company and its affiliated entities.

ReadyLink, Inc. was the proper contracting party, and they intended to enter into the contracts with the other entities. Second, based on the verdict form's allocation of damages, defendants argue the jury unambiguously found the hospitals' breaches of contract did not damage ReadyLink, Inc. Rather, defendants contend the entire damage award was based on the fraud claim against Integrated. As such, they maintain the court erred by entering judgment against the hospitals and by finding ReadyLink, Inc. had prevailed against the hospitals for purposes of attorney fees. Since Integrated was not a party to any of the contracts, defendants claim the entire fee award should be vacated if we find that ReadyLink, Inc. did not prevail against the hospitals.

As to the first issue, substantial evidence supports the trial court's finding that there was a mutual mistake and that the parties intended for ReadyLink, Inc. to be the contracting party. The record shows defendants did not particularly care which ReadyLink entity entered into the contracts. They only sought to contract with the entity that provided temporary nursing services, which was indisputably ReadyLink, Inc. It is also undisputed that Integrated drafted the four relevant contracts. Yet these contracts identify four different ReadyLink entities, three of which do not exist. Finally, there is evidence defendants were informed that ReadyLink, Inc. was the proper contracting party prior to entering the contracts at issue. Thus, it was reasonable for the court to find that defendants mistakenly listed the other ReadyLink entities in the contracts.

On the second issue, the verdict form was ambiguous as to whether the jury found the hospitals' breaches of contract damaged ReadyLink, Inc. Based on the record, the most reasonable interpretation of the verdict form is that ReadyLink, Inc. was damaged by these breaches. The jury simply allocated all the damages to Integrated since it was the hospitals' alter ego and the hospitals did not have any money to pay a judgment.

For these reasons, we affirm the trial court's judgments and award of attorney fees.

3

# I

## FACTS AND PROCEDURAL HISTORY

*A. Background History*

The hospitals operate as wholly owned subsidiaries of Integrated: (1) WMC-SA, Inc., doing business as Western Medical Center Santa Ana (Western Santa Ana); (2) WMC-A, Inc., doing business as Western Medical Center Anaheim (Western Anaheim); (3) Chapman Medical Center, Inc., doing business as Chapman Medical Center (Chapman); and (4) Coastal Communities Hospital, Inc., doing business as Coastal Communities Hospital (Coastal; collectively, the Hospitals).

The ReadyLink company had contracted with the Hospitals to provide temporary nurses since the early 2000s.[2] The contracts were generally for terms of one or two years and were consistently renewed over the years. There are five contracts relevant to this appeal. The first was entered into in 2010 by Western Santa Ana and ReadyLink, Inc. The other four were entered into in 2012 by each Hospital and signed by various existing and nonexistent ReadyLink entities.

In September 2011, Western Santa Ana was sued for malpractice by Daniel Stearns (the Stearns lawsuit). After conducting discovery, Western Santa Ana believed that Suvarna Durgiah, a ReadyLink, Inc. nurse, was responsible for Stearns' injuries. So, per the 2010 contract between the parties, it requested that ReadyLink, Inc. provide a defense and agree to indemnify it for any losses. ReadyLink, Inc. rejected the tender. In response, Integrated decided to offset the amount of indemnity it believed Western Santa Ana was owed by refusing to pay ReadyLink Inc.'s bills for all the Hospitals.

Western Santa Ana eventually settled the Stearns lawsuit and then filed suit against ReadyLink, Inc. for allegedly breaching its duties to defend and indemnify under

---

[2] Integrated purchased the Hospitals from a third party in 2004. It changed its name to KPC Healthcare after this case was filed. Similarly, each Hospital also changed its name. We use the defendants' prior names to be consistent with the record.

the parties' 2010 contract (the indemnity lawsuit). Weeks later, ReadyLink, Inc. filed this action against defendants, alleging they collectively owed over $244,000 for services ReadyLink, Inc. had provided to each Hospital under the 2012 contracts. Along with breach of contract claims, ReadyLink, Inc. asserted that defendants had fraudulently entered into the 2012 contracts with the intent not to pay ReadyLink, Inc. for the services provided. The Hospitals admitted they had not paid for the services but claimed they were entitled to offset the indemnity ReadyLink, Inc. allegedly owed Western Santa Ana from the Stearns lawsuit. The trial court consolidated this action with the indemnity lawsuit for purposes of trial.

Two years after filing this action, ReadyLink, Inc. discovered it was not a party to any of the 2012 contracts with the Hospitals. Rather, as explained in more detail in the discussion, the contracts identified several different existing and nonexistent ReadyLink entities as the contracting party. ReadyLink, Inc. amended its complaint to add a reformation claim to revise the 2012 contracts and insert itself as the contracting party.

The consolidated trial was divided into three phases. In the first phase, the trial court heard several questions of contract interpretation, including ReadyLink, Inc.'s reformation claim. The court found reformation of the 2012 contracts was warranted due to a mutual mistake between the contracting parties.

The second phase was dedicated to the indemnity lawsuit. Prior to this phase, the trial court had ruled that ReadyLink, Inc.'s indemnity obligation was only triggered if nurse Durgiah had been negligent. In this phase, a jury found that she had not been negligent, and, consequently, ReadyLink, Inc. was not obligated to indemnify Western Santa Ana.

The third phase focused on ReadyLink, Inc.'s breach of contract and fraud claims against defendants based on the 2012 contracts. During this phase, the parties stipulated that Integrated was the alter ego of each Hospital. A jury found the Hospitals

5

had breached their respective contracts.  It also found that Integrated, but not the Hospitals, had acted fraudulently.  The jury awarded ReadyLink, Inc. $377,303.73 in total damages, and the trial court subsequently entered judgment in favor of ReadyLink, Inc. and against defendants.

Defendants then moved to vacate the judgment.  Among other things, they argued ReadyLink, Inc. had not prevailed against the Hospitals.  This argument was based on the jury's response to a question on the special verdict form allocating damages to each defendant.  In answering this question, the jury entered zeros next to each Hospital and allocated the entire damage award against Integrated.  From this, defendants argued the jury had found each Hospital's breach of contract did not damage ReadyLink, Inc. and the entire damage award was based on Integrated's fraudulent conduct.  The trial court rejected this theory and denied the motion to vacate.  It found the only reasonable interpretation of the verdict form was that "the jury intended to award damages against the four subsidiaries, but did not do so because they were told that the subsidiaries were unable to pay and that [Integrated] as their alter ego could be held financially responsible for the subsidiaries' breaches of contract."

ReadyLink, Inc. moved for attorney fees based on various provisions in its 2012 contracts with the Hospitals.  Integrated was not a party to any of these contracts.  Defendants argued ReadyLink, Inc. was not entitled to fees because it had not prevailed against the Hospitals for the reasons above.  The trial court again rejected this argument and awarded ReadyLink, Inc. over $1.2 million in attorney fees.  It then entered an amended judgment that included the attorney fees and costs awarded to ReadyLink, Inc.

Defendants filed three separate appeals of the trial court's initial judgment (G057280), amended judgment (G057581), and award of attorney fees (G057382), which were all consolidated.  Western Santa Ana also filed a separate appeal challenging the trial court's judgment in the indemnity lawsuit (G057040), which was not consolidated with the other three appeals and is the subject of a companion opinion.  In this

6

consolidated appeal, defendants allege the following errors: 1) reformation of the 2012 contracts was unwarranted because there was no mutual mistake; 2) judgment was improperly entered against the Hospitals because the jury found their breaches of the 2012 contracts did not cause any damages; and 3) the award of attorney fees to ReadyLink, Inc. was improper because it did not prevail against the Hospitals.[3]

## II

## DISCUSSION

### A. *Law Governing Appeals*

"On appeal, a judgment of the trial court is presumed to be correct. [Citation.] Accordingly, if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. [Citations.] All intendments and presumptions are made to support the judgment on matters as to which the record is silent. [Citation.] We presume the trial court followed applicable law." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) The burden is on the appellant to show reversible error. (*Donohue v. AMN Services, LLC* (2018) 29 Cal.App.5th 1068, 1076.)

---

[3] ReadyLink, Inc. also filed a cross-appeal, arguing the indemnification provision in its contract with Western Santa Ana is void as a matter of law under the nondelegable duty doctrine. ReadyLink, Inc. raised the same cross-appeal in Western Santa Ana's appeal of the indemnity lawsuit (G057040). We reject ReadyLink, Inc.'s cross-appeal for the reasons stated in that opinion.

7

*B. Reformation of the 2012 Contracts*

    *1. Applicable Law*

   "Reformation is an equitable remedy the essential purpose of which is to ensure the contract, as reformed, reflects the parties' mutual intention. [Citations.] '[T]he court may only reform the writing to conform with the mutual understanding of the parties at the time they entered into it, if such an understanding exists. [Citation.]' [Citation.] 'Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties.'" (*Komorsky v. Farmers Ins. Exchange* (2019) 33 Cal.App.5th 960, 974.) Although an action for reformation has been codified in Civil Code section 3399, "the remedy of reformation is equitable in nature and not restricted to the exact situations stated in section 3399." (*Jones v. First American Title Ins. Co.* (2003) 107 Cal.App.4th 381, 388 (*Jones*).)

   A mutual mistake occurs where the contracting "parties mutually intend one thing, but due to mistake or inadvertence, the written document does not reflect that intent. In that instance, the law permits the court to reform the document consistent with the parties' intent." (*PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 152.) Still, "mistake is [only] an ingredient of reformation, . . . not its essence. The essential purpose of reformation is to reflect the intent of the parties." (*Jones*, *supra*, 107 Cal.App.4th at p. 389.)

   "We review the trial court's exercise of its equitable powers under an abuse of discretion standard of review." (*Ho v. Hsieh* (2010) 181 Cal.App.4th 337, 345; see, e.g., *Jones*, *supra*, 107 Cal.App.4th at p. 390 [reviewing trial court's denial of reformation for an abuse of discretion].) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to

8

the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) As such, a trial court's findings on the intent of the parties and the existence of a mutual mistake are generally reviewed for substantial evidence. (*Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 700; *Alvarez v. Ritter* (1945) 67 Cal.App.2d 574, 577-578.) But "[w]here . . . the extrinsic evidence is not in conflict, the determination of whether a mutual mistake occurred is a question of law." (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 (*Hess*).)

Citing *Hess*, Defendants argue the de novo standard applies here. We disagree. In *Hess*, the extrinsic evidence was entirely uncontroverted. Only the plaintiff introduced extrinsic evidence as to the intent of the parties, while the defendant relied solely on the contract's language. (*Hess*, *supra*, 27 Cal.4th at pp. 522, 526.) Here, as shown below, the parties' extrinsic evidence is in conflict, so the substantial evidence standard applies. Under this standard, "we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.) We also do "not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court. [Citations.] The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

### 2. *Additional Facts*

The ReadyLink company began in the 1990s with the formation of ReadyLink Healthcare, a Nevada corporation (Healthcare). In the beginning, Healthcare was the sole ReadyLink entity. It both hired nurses and contracted with hospitals. In 2009, the ReadyLink company reorganized its corporate structure. Healthcare stopped

contracting with hospitals and was solely responsible for contracting with travel nurses, who generally work for hospitals on multi-week contracts. Another entity, USA Registries, contracted with registry nurses, who work individual shifts at various hospitals on an as-needed basis. Finally, ReadyLink, Inc. was formed to contract with medical providers to provide temporary nursing services. It contracted with Healthcare and USA Registries to supply the nurses used to fulfill its agreements with the providers.

Since Healthcare had been the sole contracting ReadyLink entity for over a decade, the rollout of the new reorganization plan had its difficulties. There was some internal and external confusion as to the proper ReadyLink entity to list on contracts. Thus, some of the contracts entered into after the reorganization mistakenly listed the wrong ReadyLink entity as the contracting party. Such appears to be the case here, as none of the 2012 contracts identify ReadyLink, Inc. as the contracting party.

The trial court ruled reformation of the 2012 contracts was warranted based on mutual mistake. It reasoned the parties had intended for ReadyLink, Inc. to provide temporary nursing services but had listed the wrong entity in their contracts. Defendants had sought temporary nursing services and were not particularly concerned with which ReadyLink company provided them. They simply sought to contract with the entity that provided these services, which was ReadyLink, Inc. Further, the court noted the 2010 contracts for Western Santa Ana and Western Anaheim, which had been drafted by Integrated, correctly identified ReadyLink, Inc. as the contracting party. So, it concluded defendants had been informed prior to 2010 that ReadyLink, Inc. was the proper contracting party.

10

*3. Analysis*

Defendants have not shown reversible error. They make three arguments, which we address in turn.

First, defendants contend there was no mutual mistake because they were not mistaken and specifically intended to contract with Healthcare. They assert many of the documents provided to them in connection with the 2012 contracts, such as insurance certificates and W-9 forms, named Healthcare. They also insist no one told them to contract with ReadyLink, Inc. In support, they cite testimony from a ReadyLink company witness stating Healthcare did not notify its clients of the changes to its internal corporate structure following its 2009 reorganization.

This argument generally misunderstands the applicable standard of review. We do not review the evidence contrary to the trial court's opinion and reweigh it against the evidence in support. Rather, we discard contrary evidence and review the record to determine whether the court's decision is supported by sufficient evidence. (*In re Marriage of Drake*, *supra*, 53 Cal.App.4th at p. 1151; *In re Michael G.*, *supra*, 203 Cal.App.4th at p. 589.) Here, there is substantial evidence that defendants did not intend to contract with Healthcare, rather, they intended to contract with ReadyLink, Inc. The purpose of the 2012 contracts was for the Hospitals to obtain temporary nursing services. Healthcare did not provide these services. ReadyLink, Inc. did. It is undisputed that ReadyLink, Inc. was the entity that provided these services after the 2009 reorganization and, specifically, that it provided the nurses to the Hospitals under the 2012 contracts.

The fact that the ReadyLink company did not generally inform its clients of its reorganization plan does not necessarily mean that no one informed Integrated that ReadyLink, Inc. would be the new contracting party prior to the 2012 contracts. It is undisputed that Integrated drafted the 2010 and 2012 contracts. Two of the three 2010 contracts, the ones for Western Santa Ana and Western Anaheim, correctly identified

11

ReadyLink, Inc. as the contracting party.[4]  From this, it can be reasonably inferred that someone informed Integrated prior to 2010 that ReadyLink, Inc. was the proper contracting entity.  It can also be inferred that in preparing the 2012 contracts, Integrated mistakenly removed ReadyLink, Inc. from the Western Santa Ana and Western Anaheim contracts and replaced them with the wrong ReadyLink entity.  And we must accept these inferences on appeal.  (*In re Marriage of Drake*, *supra*, 53 Cal.App.4th at p. 1151.)

Defendants' argument that they specifically intended to contract with Healthcare is also unpersuasive.  There is no dispute the 2012 contracts were all supposed to list the same ReadyLink entity as the contracting party, which, according to defendants, was meant to be Healthcare.  Yet the four contracts prepared by Integrated list four different ReadyLink entities, three of which do not exist.  Only two of the contracts list Healthcare as the contracting entity.  And one of the contracts lists a different ReadyLink entity on the first page and the signature page.[5]  These discrepancies are summarized on the chart below and marked in italics:

| Hospital | Entity on First Page | Signing Entity |
| --- | --- | --- |
| Western Santa Ana | ReadyLink Healthcare, *Inc.*, a Nevada Corporation | ReadyLink HealthCare, Inc., a *California* corporation |
| Chapman | Healthcare | ReadyLink Healthcare (no state of incorporation listed) |
| Coastal | ReadyLink Healthcare, a *California* corporation | ReadyLink Healthcare (no state of incorporation listed) |

---

[4]  The third contract covered Chapman and Coast together and was entered into by ReadyLink Healthcare, a *California* corporation, which is a nonexistent entity.

[5]  The contracts used the defined term "Agency" throughout for the various ReadyLink entities.  Thus, the contracting ReadyLink entity only appears on the first page, where it is defined as "Agency," and on the signature page.

12

| Western Anaheim | Healthcare | ReadyLink Healthcare (no state of incorporation listed) |
|---|---|---|

ReadyLink Healthcare, Inc., a Nevada corporation, ReadyLink Healthcare, Inc., a California corporation, and ReadyLink Healthcare, a California corporation do not exist. The fact that Integrated listed three nonexistent entities on two of the four contracts belies defendants' argument that they were not mistaken. It also controverts their argument that it was material to them that Healthcare be the specific contracting party.

In their reply brief, defendants assert it was not necessarily material that Healthcare per se be the contracting party. Rather, it was material to them that the same entity contracting with the Hospitals was the same entity that hired the nurses. They did not intend for ReadyLink, Inc. to be the contracting party because it did not directly hire the nurses provided. As evidence, they point to various provisions in the relevant contracts that require the nurses provided to be the employees of the contracting entity. For example, it cites a provision stating that "[s]taff assigned by [ReadyLink entity] to Hospital under this Agreement are employees of [ReadyLink entity] and are not employees of Hospital." It also cites similar provisions stating the ReadyLink entity is the nurses' employer and is responsible for ensuring compliance with applicable labor laws.

These terms do not manifestly show it was material to defendants that the ReadyLink entity listed on the contract be the same entity that hired the nurses. Rather, these provisions only show the Hospitals' desire to insulate themselves from labor law liability. The contracts show the parties intended for the contracting entity to ensure compliance with applicable employment laws with respect to the nurses. But the contracts do not show any concern for which specific ReadyLink entity monitored compliance. Rather, the primary focus of these provisions was to ensure that these responsibilities were not foisted on the Hospitals.

13

Moreover, reformation is an equitable remedy. The Hospitals received the agreed upon benefits under the 2012 contracts. They have not shown any material prejudice will result if the contracts are reformed to insert ReadyLink, Inc. as the contracting party. None of the parties even appeared to notice that ReadyLink, Inc. was not the contracting party until years after this lawsuit was filed. Denying reformation would also provide an undeserved windfall to the Hospitals while creating an injustice to ReadyLink, Inc. This action arose when defendants stopped paying their bills under the 2012 contracts because they wrongly insisted that ReadyLink, Inc. owed Western Santa Ana indemnity. If defendants believed Healthcare was the proper party to the 2012 contracts, it shatters their justification for the offset. They had no right to offset money they owed *Healthcare* under the 2012 contracts with an obligation allegedly owed to them by *ReadyLink, Inc.* Denying reformation would allow the Hospitals to receive all the benefits they sought under the 2012 contracts and stiff ReadyLink, Inc. on the bill. To avoid such an inequitable result, the contracts must be reformed to match the intent of the parties.[6] (See *Jones*, *supra*, 107 Cal.App.4th at p. 389.)

Defendants' second argument is that the 2012 contracts should not have been reformed due to ReadyLink Inc.'s negligence in failing to notice the incorrect entities inserted by Integrated. "Only gross negligence or 'preposterous or irrational' conduct will preclude a finding of mutual mistake." (*Hess*, *supra*, 27 Cal.4th at p. 529.) Ordinary negligence is insufficient "because '[t]here is an element of carelessness in nearly every case of mistake . . . .'" (*Id*. at pp. 528-529.) "Gross negligence has been said to mean the want of even scant care or an extreme departure from the ordinary

---

[6] In their reply brief, defendants remark in passing that the 2010 contracts with ReadyLink, Inc. were actually the result of mistake. Nothing in the record shows that defendants ever sought to reform these contracts. Nor did they raise this issue in their opening brief. Accordingly, we do not consider this argument. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

14

standard of conduct." (*French v. Construction Laborers Pension Trust* (1975) 44 Cal.App.3d 479, 487.)

ReadyLink, Inc. was not grossly negligent in failing to notice the 2012 contracts contained the wrong ReadyLink entities. The evidence at trial showed that when contracts were renewed without substantive changes, "lower level contract administrators" were authorized to sign. Since these basic renewals did not contain any material changes to the contracts, the contract administrators only reviewed the contract's billing rates prior to signing them. The 2012 contracts were supposed to be basic renewals of the 2010 contracts; their provisions were virtually identical. In conformance with the above protocol, the 2012 contracts were assigned to a contract administrator. None of the defendants informed the administrator of any changes to the 2012 contracts. As such, she believed the contracts did not include any substantive changes and performed a minimal review prior to signing them. This is not an extreme departure from the ordinary standard of conduct. Defendants cite no evidence showing that ReadyLink, Inc. was unjustified in believing the 2012 contracts were basic renewals. Nor does it cite any evidence showing the contract administrator should have known material changes had been made to the 2012 contracts. Given this, it was not preposterous for administrator to minimally review the 2012 contracts prior to signing them.

Third, defendants contend ReadyLink, Inc. was barred from seeking reformation because it had an adequate remedy at law. (Citing *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 834-835.) Namely, instead of reforming the contracts, Healthcare could have brought this lawsuit. But this argument fails to consider that half of the 2012 contracts were entered into by nonexistent entities, not Healthcare. This argument also ignores that "[c]orporate entities are presumed to have separate existences . . . ." (*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737, disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.) ReadyLink, Inc. is the party lacking a legal remedy. Substituting in Healthcare might provide a legal

15

remedy to the ReadyLink company generally, but it does not provide a legal remedy to ReadyLink, Inc., which exists separately from the other ReadyLink entities. Since ReadyLink, Inc. had no legal remedy, it was entitled to seek reformation.

*C. Judgment Against the Hospitals*

"'If the verdict is ambiguous the party adversely affected should request a more formal and certain verdict. Then, if the trial judge has any doubts on the subject, he may send the jury out, under proper instructions, to correct the informal or insufficient verdict.' [Citations.] But where no objection is made before the jury is discharged, it falls to 'the trial judge to interpret the verdict from its language considered in connection with the pleadings, evidence and instructions.' [Citations.] Where the trial judge does not interpret the verdict or interprets it erroneously, an appellate court will interpret the verdict if it is possible to give a correct interpretation." (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456-457 (*Woodcock*).)

The jury found the Hospitals had breached the 2012 contracts by failing to pay ReadyLink, Inc. for services provided. But the Hospitals contend the verdict form plainly shows the jury found these breaches caused no damages. They claim the trial court erred by interpreting the verdict form contrary to the jury's express findings and then entering judgment against them. Since none of the parties requested the jury clarify its verdict, it was up to the court to determine whether the verdict form was ambiguous and, if so, to interpret it. (*Woodcock*, *supra*, 69 Cal.2d at pp. 456-457.) For the reasons below, the court correctly determined ReadyLink, Inc. prevailed on its breach of contract claims and properly entered judgment against the Hospitals.

We start by rejecting the Hospitals' assertion that the jury clearly found ReadyLink, Inc. suffered no damages from their breaches of contract. Damages are an essential element of a breach of contract claim. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820-821.) Since the jury found each Hospital had breached its

16

contract, it must be presumed the jury also found that ReadyLink, Inc. suffered damages. That the jury listed zero dollars in damages next to each Hospital on the verdict form, though, creates an ambiguity. Thus, we review the trial court's interpretation of the verdict form de novo while taking into consideration the evidence presented at trial and the jury instructions. (See *Woodcock*, *supra*, 69 Cal.2d at pp. 456-457; *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092.)

The evidence strongly shows the jury intended to award damages to ReadyLink, Inc. for the Hospitals' breaches of contract. Among other things, the jury's award of $377,303.73 matched the exact total ReadyLink, Inc. claimed it was owed by all four Hospitals as a result of their breaches.[7] This indicates the jury's award of damages was based on the Hospitals' refusal to pay ReadyLink, Inc.'s invoices. Indeed, the jury instructions stated the Hospitals "admit they have not paid for services rendered under the [2012] contract[s]. However, [the Hospitals] claim they are entitled to an 'offset.'" The jury rejected defendants' offset defense, and, consequently, it must have found defendants failed to pay for services under the 2012 contracts. The most logical inference from this finding is that the jury's damage award was based, at least in part, on the Hospitals' failure to pay for the services. In other words, the award arose from the Hospitals' breaches of contract.

While defendants argue the entire damage award was based solely on the fraud claim against Integrated, this interpretation is unlikely. The more reasonable interpretation is that the jury's award was based on both the breach of contract claims against the Hospitals and the fraud claim against Integrated. The jury simply allocated the entire award against Integrated on the verdict form for three reasons.

---

[7] Specifically, ReadyLink, Inc. claimed that, including interest, Western Santa Ana owed $45,766.05, Chapman owed $153,356.88, Coastal owed $51,418.92, and Western Anaheim owed $126,761.89, which totals $377,303.74. During closing argument, ReadyLink, Inc. mistakenly stated the sum of these amounts is $377,303.73, one cent less than the actual total.

17

First, defendants stipulated Integrated was the alter ego of the Hospitals during trial. As such, it was liable for any damages awarded against the Hospitals. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106.) Defendants' counsel told the jury several times during closing arguments that Integrated would be responsible for any judgment against the Hospitals. For example, counsel stated "[y]ou heard the stipulation, and it essentially amounts to [Integrated] will stand responsible for a judgment against any of those subsidiaries."

Second, the evidence presented at trial showed Integrated paid all the Hospitals' invoices. In fact, none of the Hospitals had bank accounts from which they could even pay bills. Given the alter ego stipulation, the jury likely allocated the entire sum of damages against Integrated since the Hospitals could not pay any judgment against them.

Third, the jury assessed a single sum to avoid double dipping, which would have awarded the same amount of damages twice for the same wrongful conduct, i.e., defendants' failure to pay ReadyLink, Inc.'s bills. ReadyLink, Inc.'s counsel told the jury during closing arguments that "[t]he fraud numbers and your damages are going to be the same as the contract numbers. Exactly the same." Counsel further acknowledged it would be a "double dip" to award all the individual damages ReadyLink, Inc. sought against each Hospital and the total damages it sought against Integrated.

Defendants also suggest the jury awarded no damages for the breach of contact claims because it found ReadyLink, Inc. was not a party to any of the 2012 contracts. They offer no evidence to support this theory, other than observing the jury was never told the 2012 contracts had been reformed by the trial court. This argument is meritless. To find each Hospital had breached its respective contract, the jury necessarily had to find ReadyLink, Inc. was a party to each of the relevant contracts. (See *Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at pp. 820-821 [stating elements for a breach of contract claim].) Likewise, the jury instructions stated that to find a breach of

18

contract, the jury had to find that ReadyLink, Inc. had contracted with each of the Hospitals.

For these reasons, we agree with the trial court's conclusion that "it makes no sense to argue that the jury awarded no damages arising from the breaches, when the jury in fact did award damages and the jury did find that the four subsidiaries had breached their contracts. The only reasonable way to interpret the jury verdict is to say that the four subsidiaries breached their contracts, but that [Integrated] would be liable for any damages because it was the alter ego of its four subsidiaries."

*D. The Attorney Fee Award*

The trial court's award of attorney fees was based on various provisions in the 2012 contracts that grant fees to the prevailing party in a lawsuit. Only the Hospitals were parties to the 2012 contracts. So, defendants argue the fees were improperly awarded because ReadyLink, Inc. did not prevail against the Hospitals. As set forth above, we reject this argument.

Defendants also contend "the trial court . . . erred in awarding ReadyLink attorney's fees incurred in defending against [Western Santa Ana's] lawsuit, because the contract at issue in that case (from 2010) does not contain an attorney's fee provision." That is the whole argument. There are no citations to legal authority. And the only citation to the record is to the 2010 contract between Western Santa Ana and ReadyLink, Inc. It is unclear how much of the court's fee award, if any, was based on the indemnity lawsuit. Given the undeveloped state of this argument, we need not address it. (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.)

Regardless, this argument would be rejected even if considered. A trial court has "discretion to award a fee that compensates work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded but was nonetheless closely related to the action in which fees are sought and

19

useful to its resolution." (*Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 779-780.)  Here, it was necessary for the court to resolve the indemnity lawsuit to determine the merits of defendants' offset defense in this action.  Thus, it was in the court's discretion to award ReadyLink, Inc. the attorney fees it incurred defending against the indemnity lawsuit.

## III

## DISPOSITION

The judgments and attorney fees award are affirmed.  ReadyLink, Inc. is entitled to its costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.